Cross-Complainants

WILLIAM B STEWART, III
In Proper Persona
2094 El Camino Real #218
Santa Clara, CA 95050
Facsimile:   408-453-0530 (Call first)

**Filed**

JUN 2 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

RECEIVED

08 JUN 17 AM 8: 07

RICHARD W. WIEKING CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA.

ROSALIE A. GUANCIONE
In Proper Persona
15732 Los Gatos Blvd #410
Los Gatos, CA 95032
Facsimile:   408-453-0530 (Call first)

STEWART UNIVERSITY OF AMERICA
2094 El Camino Real #218
Santa Clara, CA 95050

DR. WILLIAM B. STEWART, JR
WILLIAM B. STEWART, IV
JENN STEWART
LANCE ARTHUR STEWART
SHAENA A. STEWART
JAMES T. STEWART
CAROL S. STEWART
c/o WILLIAM B. STEWART, III

LARKSPUR (General Innov. West, LLC)
15732 Los Gatos Blvd #410
Los Gatos, CA 95032

GENERAL INNOVATIONS WEST, INC.
2094 El Camino Real #218
Santa Clara, CA 95050

ROYAL HOUSE OF STEWART CORP., INC.
15732 Los Gatos Blvd #410
Los Gatos, CA 95032

UNITED STATES DISTRICT COURT
Northern District of California
San Jose Division
280 So First Street #3035
San Jose, CA 95113-3099

| | |
|---|---|
| William B Stewart, III | ) Stewart vs. SF Police Credit Union |
| Rosalie A. Guancione | ) Fed. Case #C08 02996 |
| William B Stewart, IV | ) |
| Jenn Stewart | ) (COUNTER CLAIM) |
| Lance A Stewart | ) CROSS COMPLAINT |
| Dr. William B Stewart, Jr. | ) DEMAND FOR JURY TRIAL |
| Rosalie M. Stewart | ) |
| Shaena A. Stewart | ) VIOLATION OF CIVIL RIGHTS |

| | |
|---|---|
| James T. Stewart | ) COMPLAINT FOR DAMAGES, |
| Carol S. Stewart | ) |
| Stewart University of America (A Corp. | ) (42 U.S.C. § 1983; Federal Tort Claims Act, |
| of the District of Columbia) | ) 18 U.S.C. Impeding Commerce) |
| General Innovations West, Inc. (A Corp. | ) |
| of Nevada) | ) COMPLAINT FOR VIOLATION OF CIVIL |
| Royal House of Stewart Corporation, Inc.) | RIGHTS (INCLUDING FREEDOMS OF |
| (A Corp. of the Federation of | ) FIRST AMENDMENT, FOURTH, SIXTH |
| St. Kitts and Nevis) | ) AMENDMENTS, FIFTH AMENDMENT, |
| Larkspur (Div. of Gen. Innov. West, Inc.)) | FOURTHEENTH AMENDMENT, CRUEL |
| | ) AND UNUSUAL PUNISHMENT, |
| Cross-Complainants | ) REFUSAL TO |
| | ) GRANT PETITION OF HABEUS CORPUS, |
| vs. | ) UNREASONABLE BAIL, LACK OF DUE |
| | ) PROCESS, FRAUD AND |
| | ) MISREPRESENTATION AS JUDGE BY |
| Michael R Sordelli, President / CEO | ) SUPERIOR COURT COMMISSIONER, |
| DBA-S.F. Police Credit Union | ) ILLEGAL SEARCH AND SEIZURE, |
| Michael R Sordelli | ) FALSE IMPRISONMENT, |
| San Francisco Police Credit Union | ) KIDNAPPING, FALSE ARREST, AND |
| Ms. Debbie De Filippo | ) DISRUPTION OF QUIET ENJOYMENT IN |
| City of San Mateo | ) HOME, TERRORIZING, INVASION OF |
| | ) PRIVACY, WIRETAP, |
| Councilperson Brant Grotte | ) UNTIMELY ARRAIGNMENT WITHOUT |
| Councilperson Jon Lee | ) DISMISSAL OF CASE, PROSECUTION |
| Councilperson Jan Epstein | ) WITH FALSE TESTIMONY, |
| Mayor and Councilman Jack Matthews | ) AND MALICIOUS PROSECUTION) |
| Councilperson Carol Groom | ) |
| City of San Mateo Police Department | ) |
| Susan Manheimer, City of San Mateo | ) |
| Police Chief | ) COMPLAINT FOR BREACH OF |
| Detective and Sergeant Scott Miller | ) CONTRACT AND FRAUD COMMITTED |
| Det. Dave Peruzarro | ) BY CREDITOR |
| Det. Stewart | ) (U.C.C. ARTICLE 3-603, 604, and 15 U.S.C |
| County of San Mateo | ) 1692g and 1692c(c), Fair Debt Collection |
| President and Supervisor Adrienne J. | ) Practices) |
| Tissier | ) |
| Vice Pres and Supervisor Mark Church | ) COMPLAINT FOR SLANDER AND LIBEL |
| Supervisor Jerry Hill | ) |
| Supervisor Richard S. Gordon | ) COMPLAINT FOR FALSE TESTIMONY |
| Supervisor Rose Jacobs | ) AND FALSE REPORTING |

San Mateo County Dept. of Corrections )
Judge Gerald Buchwald )
(Ret.) Commissioner Joseph Gruber )
San Jose City Police Department )       COMPLAINT FOR IMPEDING
San Jose City Police Chief Rob Davis )  COMMERCE (18 U.S.C.)
City of San Jose )
Mayor and Councilperson Chuck Reed )    COMPLAINT FOR EXEMPLARY AND
Councilperson Pierluigi Oliverio )      PUNITIVE DAMAGES AGAINST
Councilperson Pete Constant )           CREDITOR AND GOVT. AGENCIES
Councilperson Madison Nguyen )          (EMOTIONAL ABUSE, CIVIL RIGHTS,
Vice Mayor and Councilperson David )    CREDITOR LAWS, LIBEL, SLANDER,
                        D. Cortese )    OTHER ABUSES)
Councilperson Sam Liccardo )
Councilperson Judy Chirco )
Councilperson Kansen Chu )              COMPLAINT FOR RELIEF FROM
Councilperson Nancy Pyle )              CREDITOR CLAIMS
Councilperson Nora Campos )
County of Santa Clara )                 COMPLAINT FOR PAIN AND
Judge Paul Bernal )                     SUFFERING
Santa Clara County Dept. of Corrections )
Supervisor Donald F. Gage )             COMPLAINT FOR CONSEQUENTIAL
Supervisor Pete McHugh )                DAMAGES TO REPUTATION AND
Supervisor Liz Kniss )                  BUSINESSES
Supervisor Blanca Alvarado )
Supervisor Ken Yeager )
Scheer Law Group, LLP )
Mr Spencer P. Scheer (personally) )
Mr Jonathon Seigel (personally) )
Others as identified in discovery )
                    Cross-defendants )
_____ )

## COMPLAINT FOR DAMAGES

(Assault and Battery, False Arrest, False Imprisonment, Negligence, Violation of First
Amendment, Fourth Amendment and Fourteenth Amendment Rights)

### INTRODUCTORY STATEMENT

1. This is an action for damages sustained by citizens of the United States, and
corporations both of the United States and outside the United States, against police

officers of the San Mateo City Police Department, and police officers of the San Jose Police Department, who unlawfully performed a home invasion, unlawfully arrested, assaulted and battered, prosecuted, and harassed the plaintiffs.

2. The action is against the San Mateo City Police Chief as the supervisory officer responsible for the conduct of the Cross-defendants and for the Police Chief's failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct, which is sued as a person under 42 U.S.C. § 1983.

3. The action is against the San Jose Police Chief as the supervisory officer responsible for the conduct of the Cross-defendants and for the Police Chief's failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct, which is sued as a person under 42 U.S.C. § 1983.

4. The action is against the city, and city council members of the City of San Mateo, who were notified in writing, in advance of the most serious behavior and conduct perpetrated by police officers of the City of San Mateo, as the supervisory government officers responsible for the conduct of the Cross-defendants and for the city councilperson's failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct, and against the County of San Mateo and County Supervisors as the employer of the Department of Corrections personnel and the Judiciary of the County of San Mateo, which is/are sued as a person under 42 U.S.C. § 1983.

5. The action is against the city, and city council members of the City of San Jose, whose police officers both observed and were participants in the actions of the San Mateo Police within Santa Clara County in the City of San Jose, as the supervisory government officers responsible for the conduct of the Cross-defendants and for the city councilperson's failure to take corrective action with respect to police personnel whose vicious propensities were notorious, and failure to assure proper training and supervision of the personnel, or failure to implement meaningful procedures to discourage lawless official conduct, and against the County of Santa Clara and County Supervisors as the employer of the Department of Corrections personnel and the Judiciary of the County of Santa Clara, which is/are sued as a person under 42 U.S.C. § 1983.

### JURY DEMANDED
### JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 and provisions of the First, Fourth, Fifth, Sixth, Eight, and Fourteenth Amendments to the Constitution of the United States. This case is brought for violations of Constitutional and Civil Rights which is a justification for elevation to the United States District Court.

7. This action is also brought pursuant to 15 U.S.C. §§ 1692g, and 1692c(c) and the First, Fourth, Eight, and Fourteenth Amendments to the Constitution of the United States. This case is brought for violations of Constitutional and Civil Rights which is a justification for elevation to the United States District Court.

8. This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331, 1343(a)(3), (4), 1336(a), the First and Fourth Amendments of the United States Constitution, and the Federal Tort Claims Act. This case is brought for violations of Constitutional and Civil Rights which is a justification for elevation to the United States District Court.

9. This Court may also exercise supplemental jurisdiction over the plaintiff's state law claims that arise from the same facts and circumstances under 28 U.S.C. § 1367.

10. On April 16, 2008, cross-complainant submitted Administrative Claims on Forms used by the respective governmental agencies, Claim for Damage, Injury, or Death, to the City of San Jose, City of San Mateo, for actions of their respective city, city council, city council persons, city police departments and city policemen. These claims have been either ignored or denied.

11. On April 16, 2008, cross-complainant submitted Administrative Claims on Forms by the respective governmental agencies, Claim for Damage, Injury, or Death, to the County of Santa Clara, and County of San Mateo, for actions of their respective county, county board of supervisors, county supervisors, Superior Court Judiciary, and Department of Corrections. These claims have been either ignored or denied.

### PARTIES

12. Cross-Complainants are:

a. William B. Stewart, III, a resident of San Jose, and at all times relevant to the allegations of this cross-complaint and is a citizen of the United States, and a resident of Santa Clara County, California.

b. Lance A. Stewart, a son of William B. Stewart, III, a resident of San Jose, and at all times relevant to the allegations of this cross-complaint and is a citizen of the United States, and a resident of Santa Clara County, California.

c. Rosalie A. Guancione, a resident of San Jose, and at all times relevant to the allegations of this cross-complaint and is a citizen of the United States, and a resident of Santa Clara County, California.

d. William B. Stewart, IV, a son of William B. Stewart, III, and a resident of the State of Colorado, and at all times relevant to the allegations of this cross-complaint a citizen of the United States, and a resident of Denver. William Bullock Stewart IV is considered a resident of the State of Colorado for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

e. Jenn Stewart, wife of William B. Stewart, IV, and a resident of the State of Colorado, and at all times relevant to the allegations of this cross-complaint a citizen of the United States, and a resident of Denver. Jenn Stewart IV is considered a resident of the State of Colorado for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

f. Dr. William B. Stewart, Jr., a resident of Port Hueneme, California, and at all times relevant to the allegations of this cross-complaint a citizen of the United States, and a resident of Ventura County, California.

g. James T. Stewart, a resident of Springfield, Virginia, and at all times relevant to the allegations of this cross-complaint a citizen of the United States, and a resident of the state of Virginia for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

h. Carol S. Stewart, a resident of Springfield, Virginia, and at all times relevant to the allegations of this cross-complaint a citizen of the United States, and a resident of the state of Virginia for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

i.   Stewart University of America, a non-profit institution, 501(c)(3), charitable educational Corporation, incorporated in the District of Columbia, and existed at all times relevant to the allegations of this cross-complaint after May 24, 2007, and is a person under the law of the United States, whose Officers and Directors include William B. Stewart, III, and Rosalie A. Guancione. Stewart University of America is considered a resident of the District of Columbia for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

j.   General Innovations West, Inc., a Corporation, incorporated in the State of Nevada, and existed at all times relevant to the allegations of this cross-complaint, and is a person under the law of the United States, whose Officers and/or Directors include Rosalie A. Guancione. General Innovations West, Inc. is considered a resident of the State of Nevada for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

k.   General Innovations West, LLC (dba Larkspur), a division of General Innovations West, Inc., a California LLC Corporation, and at all times relevant to the allegations of this cross-complaint in existence as Larkspur, and is a person under the law of the United States.

l.   Royal House of Stewart Corporation, Inc., a Corporation of the Commonwealth Federation of St. Kitts and Nevis, West Indies, an exempt corporation under SEC rules, and existed at all times relevant to the allegations of this cross-complaint after February 6, 2007, and is a person under the law of the United States, whose Officers and Directors include General Innovations West, Inc., William B. Stewart, III, and Rosalie A. Guancione. Royal House of Stewart Corporation, Inc., is considered a resident of the Federation of St. Kitts and Nevis for the purposes of this complaint, creating justification for a diversity jurisdiction elevation to United States District Court.

13. Cross-defendants are sued under the Federal Tort Claims Act for assault and battery, false arrest, false imprisonment, slander, libel, fraud, false testimony, malicious prosecution, denial of due process, home invasion, invasion of privacy, interference with quiet enjoyment, cruel and unusual punishment, conspiracy, federal organized crime RICO statutes, negligence and other civil rights violations by Cross-defendants, their employees, agents and slaves.

14. Cross-defendants are:

    a. Law enforcement officers of the city of San Jose.

    b. Law enforcement officers of the city of San Mateo.

    c. Corrections officers of the county of Santa Clara.

    d. Corrections officers of the county of San Mateo.

    e. Two specific judges of the Sup. Ct. of California, in San Mateo County.

    f. A judge of the Sup. Ct. of California, in Santa Clara County who failed to act timely on a Petition for Writ of Habeas Corpus.

    g. City Council members and mayor of San Jose.

    h. City Council members and mayor of San Mateo.

    i. County Supervisors for Santa Clara County.

    j. County Supervisors for San Mateo County.

    k. Police Chief for San Jose.

    l. Police Chief for San Mateo.

    m. San Francisco Police Credit Union, various officers, employees, agents and slaves.

15. At all times relevant to this action, Cross-defendant Detective Scott Miller was a police officer employed by the Cross-defendant San Mateo City Police Department to perform duties in the Cross-defendant City of San Mateo and was assigned to the detective unit.

    a. At all relevant times, this Cross-defendant was acting under color of law, as the agent, servant, and employee of Cross-defendant County of San Mateo.

    b. This Cross-defendant is sued individually and in his official capacity.

16. Cross-defendants are sued under the Federal Tort Claims Act for conspiracy, federal organized crime RICO statutes, breach of contract, fraud, slander, libel, false testimony, false reporting, malicious prosecution, invasion of privacy, interference with quiet enjoyment, negligence and other civil rights violations by the agents, officers, servants and employees of the Cross-defendant San Francisco Police Credit Union within the County of San Francisco, and Cross-defendant Counties of Santa Clara and San Mateo, California.

17. At all times relevant to this action, Cross-defendant Michael R. Sordelli, President / CEO, was a corporate officer employed by the San Francisco Police Credit Union to perform corporate duties.

    a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of Cross-defendant San Francisco Police Credit Union.

b. This Cross-defendant is sued individually and in his official capacity.

18. At all times relevant to this action, Cross-defendant Ms. Debbie De Filippo was employed by the San Francisco Police Credit Union.

   a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant San Francisco Police Credit Union.

   b. This Cross-defendant is sued individually and in her official capacity.

19. At all times relevant to this action, Cross-defendant Mr. Jonathon Seigel was an agent, servant or employee of the San Francisco Police Credit Union.

   a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant San Francisco Police Credit Union.

   b. This Cross-defendant is sued individually and in his official capacity.

20. At all times relevant to this action, Cross-defendant Mr. Spencer P. Scheer was an agent, servant or employee of the San Francisco Police Credit Union.

   a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant San Francisco Police Credit Union.

   b. This Cross-defendant is sued individually and in his official capacity.

21. At all times relevant to this action, Cross-defendant Scheer Law Group, LLP was employed by the San Francisco Police Credit Union.

   a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant San Francisco Police Credit Union.

   b. This Cross-defendant is sued individually and in it's official capacity.

22. At all times relevant to this action, cross-defendant Judge Paul Bernal was a Judge of the Superior Court of California in Santa Clara, who failed to act timely on a Petition for Writ of Habeas Corpus, employed by the County of Santa Clara to perform judicial duties in the City of San Jose and was assigned to the Sup. Ct. of Calif., County of Santa Clara.

    a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant County of Santa Clara.

    b. This cross-defendant is sued individually and in his official capacity.

23. At all times relevant to this action, cross-defendant Gerald Buchwald was a Judge of the Superior Court of California in San Mateo, who issued the unjustified and illegal arrest warrant and set the unreasonable bail, employed by the County of San Mateo to perform judicial duties in the City of South San Francisco and was assigned to the South San Francisco Division of the Sup. Ct. of Calif., County of San Mateo.

    a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant County of San Mateo.

    b. This cross-defendant is sued individually and in his official capacity.

24. At all times relevant to this action, cross-defendant Joseph Gruber was a retired Commissioner, acting and representing himself as a Judge of the Superior Court of California, County of San Mateo, who conducted the first arraignment hearing 57 hours after arrest and refused to throw out the charges for lack of timely arraignment, or lower the unreasonable bail amount which was above the chart, employed by the County of San Mateo to perform judicial duties in Redwood City and was assigned to the Redwood City Division of the Sup. Ct. of Calif., County of San Mateo.

    a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant County of San Mateo.

    b. This cross-defendant is sued individually and in his official capacity.

25. At all times relevant to this action, cross-defendant Chuck Reed was the Mayor, employed by the City of San Jose to perform administrative, legislative and oversight duties in the City of San Jose and was assigned to the City Council.

    a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Jose.

    b. This cross-defendant is sued individually and in his official capacity.

26. At all times relevant to this action, cross-defendant David D. Cortese was the Vice Mayor, employed by the City of San Jose to perform administrative, legislative and oversight duties in the City of San Jose and was assigned to the City Council.

    a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Jose.

    b. This cross-defendant is sued individually and in his official capacity.

27. At all times relevant to this action, cross-defendants Pierluigi Oliverio, Pete Constant, Madison Nguyen, Sam Liccardo, Judy Chirco, Forrest Williams, Nancy Pyle, Nora Campos, and Kansen Chu, were City Councilmembers, employed by the City of San Jose to perform administrative, legislative and oversight duties in the City of San Jose and were assigned to the City Council.

    a. At all relevant times, these cross-defendants were acting as the agents, servants, and employees of cross-defendant City of San Jose.

    b. These cross-defendants are sued individually and in each of their official capacities.

28. At all times relevant to this action, cross-defendant San Jose Police Officers (John Does) were police officers employed by the City of San Jose Police Department, with issued badge numbers unknown. These cross-defendants identities are currently unknown to and undiscoverable yet by Cross-Complainants. The Cross-Complainants will amend this complaint to state the true name of each "John Doe" as soon as possible. Each "John Doe" was assigned to the San Jose Police Department in Santa Clara County.

    a. At all relevant times, these cross-defendants were acting as the agents, servants, and employees of cross-defendant City of San Jose.

    b. These cross-defendants are sued individually and in their official capacities.

29. The cross-defendant City of San Jose is a municipal corporation within the State of California and, at all times relevant to this action, it employed other cross-defendant's in this action.

30. At all times relevant to this action, cross-defendants Donald F. Gage, Pete McHugh, Liz Kniss, Blanca Alvarado, and Ken Yeager were members of the County Board of

Supervisors, employed by the County of Santa Clara to perform administrative, legislative and oversight duties in the County of Santa Clara.

    a. At all relevant times, these cross-defendants were acting as the agent, servant, and employee of cross-defendant County of Santa Clara.

    b. These cross-defendants are each sued individually and in their (his/her) official capacity.

31. The cross-defendant County of Santa Clara is a municipal corporation within the State of California and, at all times relevant to this action, it employed other cross-defendant's in this action.

32. At all times relevant to this action, Cross-defendant San Jose Police Chief Rob Davis was police chief, employed by the City of San Jose to perform administrative and oversight duties in the City of San Jose and was assigned to the police department.

    a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Jose.

    b. This Cross-defendant is sued individually and in his official capacity.

33. At all relevant times and in all their actions, the police officer cross-defendants from the City of San Jose were acting under color of law and pursuant to their authority as police personnel.

34. At all times relevant to this action, cross-defendant Jack Matthews was the Mayor, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

    a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Mateo.

    b. This cross-defendant is sued individually and in his official capacity.

35. At all times relevant to this action, cross-defendant Carol Groom was the Deputy Mayor, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Mateo.

b. This cross-defendant is sued individually and in his official capacity.

36. At all times relevant to this action, cross-defendant Brandt Grotte was a City Councilman, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Mateo.

b. This cross-defendant is sued individually and in his official capacity.

37. At all times relevant to this action, cross-defendant Jon Lee was a City Councilman, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

a. At all relevant times, this cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Mateo.

b. This Cross-defendant is sued individually and in his official capacity.

38. At all times relevant to this action, Cross-defendant Jan Epstein was a City Councilman, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Mateo.

b. This Cross-defendant is sued individually and in his official capacity.

39. At all times relevant to this action, Cross-defendant San Mateo Police Chief Susan Manheimer was police chief, employed by the City of San Mateo to perform administrative and oversight duties in the City of San Mateo and was assigned to the police department.

a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant City of San Jose.

b. This Cross-defendant is sued individually and in her official capacity.

40. At all times relevant to this action, Cross-defendant San Mateo Police Officers (John Does) were police officers employed by the City of San Mateo Police Department, with issued badge numbers unknown. These Cross-defendant's identities are currently unknown to and undiscoverable yet by Cross-Complainants. The Cross-Complainants will amend this complaint to state the true name of each "John Doe" as soon as possible. Each "John Doe" was assigned to the San Mateo Police Department in San Mateo County.

    a. At all relevant times, these Cross-defendants were acting as the agents, servants, and employees of Cross-defendant City of San Mateo.

    b. These Cross-defendant are sued individually and in their official capacities.

41. The Cross-defendant City of San Mateo is a municipal corporation within the State of California and, at all times relevant to this action, it employed other Cross-defendant's in this action.

42. At all times relevant to this action, Cross-defendant Adrienne J. Tissier was the President of the San Mateo County Board of Supervisors, employed by the County of San Mateo to perform administrative, legislative and oversight duties in the County of San Mateo.

    a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of Cross-defendant County of San Mateo.

    b. This Cross-defendant is sued individually and in her official capacity.

43. At all times relevant to this action, Cross-defendant Mark Church was the Vice President of the San Mateo County Board of Supervisors, employed by the County of San Mateo to perform administrative, legislative and oversight duties in the County of San Mateo.

    a. At all relevant times, this Cross-defendant was acting as the agent, servant, and employee of cross-defendant County of San Mateo.

    b. This Cross-defendant is sued individually and in his official capacity.

44. At all times relevant to this action, Cross-defendants Jerry Hill, Richard S. Gordon, Rose Jacobs were members of the County Board of Supervisors, employed by the County of San Mateo to perform administrative, legislative and oversight duties in the County of San Mateo.

    a. At all relevant times, these Cross-defendants were acting as the agent, servant, and employee of cross-defendant County of San Mateo.

    b. These Cross-defendants are each sued individually and in their (his/her) official capacity.

45. The Cross-defendant County of San Mateo is a municipal corporation within the State of California and, at all times relevant to this action, it employed other Cross-defendant's in this action.

46. At all relevant times and in all their actions, the police officer Cross-defendants from the Cross-defendant City of San Mateo were acting under color of law and pursuant to their authority as police personnel.

## CLAIM FOR RELIEF

47. Cross-Defendants: County of Santa Clara and County of San Mateo, and City of San Jose, and City of San Mateo, and their respective Police Departments, acting through their agents and employees; San Francisco Police Credit Union; under the color of law and with the apparent authority of the San Mateo and San Jose Police Departments and Judge Buchwald and Ret. Commissioner Gruber of San Mateo County Superior Court of California, and Judge Paul Bernal of Santa Clara County Superior Court of California, violated the Cross-Complainant's First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution in violation of 42 USC § 1983.

48. The acts of the cross-defendants that constitute deprivation of the cross-complainant's civil rights and are the basis of the claims in this action include:

    a. Denial of Fourth and Fourteenth Amendment rights:
        (1) By unlawfully and wrongfully seizing Cross-Complainant's person without probable cause, causing him unlawful detention and incarceration on serious charges, that they knew or should have known were false;
        (2) By unlawfully and wrongfully seizing plaintiff's person in clear violation of due process.

  b. Denial of Fifth and Fourteenth Amendment rights:

     (1) By knowingly and willfully submitting false data regarding an alleged transaction that led to plaintiff's arrest;

     (2) By knowingly and willfully uttering false testimony at a secret meeting with Judge Buchwald, that resulted in the issue of an arrest warrant and an assignment of an unfair and unreasonable bail amount outside the bail schedules;

     (3) By knowingly and willfully uttering false testimony in police reports;

     (4) By conspiring to suborn perjured police and SFPCU employee, agent and slave testimony against Cross-Complainant William B. Stewart and his employer – Larkspur.

  c. Denial of Cross-Complainants Sixth and Fourteenth Amendment rights:

     (1) By failing to timely disclose, and concealing discoverable information from Cross-Complainant's counsel.

     (2) By permitting and encouraging known perjured testimony to be produced at the trial by prosecution.

49. The Cross-Defendants County of San Mateo and County of Santa Clara failed to supervise or properly train Cross Defendants Department of Corrections Officers who are guards in the jails of each county, and through their lack of proper supervision and training permitted these individuals to commit some or all of the acts complained of in other paragraphs regarding the Jail Deputies and Transport Deputies, who detain innocent persons illegally and do nothing about it, and who mistreat those innocent persons held illegally, and deny them proper food, safety from physical harm, or discomfort.

50. The Cross-Defendants City of San Mateo and City of San Jose failed to supervise or properly train Cross Defendants Police Department Officers Det. Dave Peruzarro, Scott Miller, and Stewart (no relation to Cross-Complainant) of the San Mateo Police Dept., and through their lack of proper supervision and training permitted these individuals to commit some or all of the acts complained of in other paragraphs of this complaint.

51. The Cross Defendants of the City of San Mateo and City of San Jose Police Departments violated the Cross-Complainants civil rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as follows:

  a. In failing to prevent Cross-Defendant Officers Det. Dave Peruzarro, Scott Miller, and Stewart (no relation to Cross-Complainant) of the San Mateo Police Dept., and other as yet unidentified involved officers, from performing police functions after learning that these officers improperly performed their duties, as described in a letter from Cross-Complainant William B. Stewart, III, to the San Mateo

City Council and San Mateo City Police Chief and Internal Affairs Office dated July 31, 2007;

    b. In failing to notify the District Attorney of the County of San Mateo that the Cross Defendant Police Detectives Dave Peruzarro, Scott Miller, and Stewart (no relation to Cross-Complainant) of the San Mateo Police Dept. were a problem and involved in civil debt collections for the San Francisco Police Credit Union under color of law, and performing illegal wiretaps, and invasion of privacy, extortion, slander and libel, and stalking to further the collections activities.

    c. In failing to notify Cross-Complainants or San Mateo County District Attorney that the Cross-Defendant Police Detectives Scott Miller and others were falsifying their case files.

52. The San Jose Police Department is an agency of the City of San Jose and functions under the umbrella of the city government. Therefore, the acts and policies of the police department are, in effect, the acts and policies of the city government.

53. The San Mateo Police Department is an agency of the City of San Mateo and functions under the umbrella of the city government. Therefore, the acts and policies of the police department are, in effect, the acts and policies of the city government.

54. As a result of the actions of the Cross-Defendants, Cross-Complainant William B. Stewart, III, was arrested, incarcerated for 12 days and 19 ½ hours, forced to attend four hearings from March 12 (after March 10 arrest), through April 16, 2008 when the criminal charges were finally dismissed, was released on a $50,000 bail bond on March 22 at 11:30 PM

55. As a result solely of the acts of the Cross-Defendants, Cross-Complainants William B. Stewart, III, Rosalie Guancione, and Anthony Guancione, III, were denied fundamental rights; William B. Stewart, III, and Rosalie Guancione were deprived of liberty; and William B. Stewart, III, was forced to answer criminal charges of the most heinous nature.

56. In addition, Cross-Complainant's William B. Stewart, III, and Rosalie Guancione were forced to undergo the mental anguish and strain of these proceedings and to expend large sums of money for William B. Stewart, III,'s defense and will bear lasting and permanent mental scars of the ordeal.

57. The acts of the Cross-Defendants were wanton, willful, unlawful, malicious, and vicious, without regard for the system of justice in these United States.

58. Relief for credit reporting action by San Francisco Police Credit Union, and/or any other such commercial, financial or credit related encumbrances, whatsoever; collection attempts; garnishment and/or lien attachments, collection reassignments, or otherwise creating any adverse legal disabilities, is a cause of action for complaints and litigation for monetary damages and/or civil, criminal and commercial penalties to the fullest extent allowable under applicable state and federal laws, including but not limited to;

59. Relief for impeding personal/private commerce by encumbering the Cross-complainant's good name and reputation with inflammatory hearsay and/or unsubstantiated/unverified credit reporting, interfering with contracts - both public and private, recording false documents thereby intending to commit fraud, engaging in interstate mail & wire fraud schemes in violation of 18 U.S.C. §1341 §1343 by using threat, intimidation, material misrepresentation, deception and enticement to coerce the commitment of an act creating a legal disability where none previously existed, including but not limited to; collusion, conspiracy, solicitation, bank and insurance fraud, and denial/obfuscation of equal protection and due process under the law as provided for at 15 U.S.C. §1692k, *and* other RICO violations. "<u>Deceitful statements of half-truths or the concealment of material facts is actual fraud under the mail fraud statutes.</u>" ***United States v. Beecroft***, **608 F.2D 753,757. (9ᵗʰ Cir. 1979)**

## FACTUAL ALLEGATIONS

60. Cross-Complainant William B. Stewart, III, is the oldest of seven children, born to a career U.S. Navy Dentist father and public school teacher mother. He was an Eagle Boy Scout, Brotherhood member of the Order of the Arrow Brotherhood of Honor Campers, member of his church choir and graduated from public high school at age 16, where he was on the cross country team and baseball team.

61. Cross-Complainant William B. Stewart, III, has been a physicist for over 30 years, and a degreed engineer for over 20 years. He graduated from UCSB with a B.S. in Physics in 1976. He was on the college wrestling team and also wrestled in the American Athletic Union (AAU). After graduation he entered a Physics Ph.D. program at UC Irvine, where he taught physics to undergraduate pre-med majors. In 1979, he entered the University of Michigan Medical School and completed three years, including clinical rotations and Part 1 of the National Board of Medical Examiners licensing exam. He then entered a graduate program in Bioengineering at the University of Michigan, where he designed a coronary perfusion pump for use during coronary artery bypass graft surgery and received an M.S. in Bioengineering in 1985.

62. From 1979 through 1985 Cross-complainant William B. Stewart, III, was a Second Lieutenant in the US Army Reserve Medical Service Corps. In June 10, 1985, he was promoted to active duty First Lieutenant, and in July 1987 he was promoted to active duty Captain in the Medical Service Corps. He performed pharmaceutical research in Bethesda, Maryland, in a department of the Uniformed Services of the Health Sciences called the Armed Forces Radiobiology Research Institute, prior to receiving a letter of appreciation in 1989, from the General Carl Vuono, Chief of Staff of the U.S. Army, which resulted in a reassignment to the Office of the Assistant Secretary of the Army for Research Development and Acquisition, located at the Pentagon. Cross-complainant Stewart had taken an additional 2 years of graduate studies in the evenings and weekends at George Washington University in Electrical and Computer Engineering, and additional economics courses at the Defense Intelligence College. At the Pentagon, Stewart served as an action officer on the General Staff in a Lieutenant Colonel position.

63. In 1990, Cross-complainant Stewart received an Honorable Discharge from active duty and returned to California with his family of four children. In August 1994, he received an Honorable Discharge from the Army Reserve. From 1990 to the present, Cross-complainant Stewart has worked in commercial new technology development as an engineering consultant, and then as an executive. He volunteered to join the California Army National Guard in 2002, and was mobilized in 2003 on Operation Iraqi Freedom where he served in a rear detachment training reinforcements and as a munitions handler.

64. Sometime after Cross-complainant Stewart returned home from his mobilization, he was offered a membership in the San Francisco Police Credit Union that included a free deposit of $25 as a gift to anyone willing to sign up for a membership who was in the National Guard. Stewart accepted this membership and deposit.

65. After returning from mobilization on Operation Iraqi Freedom, Stewart resumed working as an independent contract consultant, as was his custom, due to it's flexibility of hours, and higher hourly pay scale, and greater deductibility of expenses. Stewart's customary hourly rates were $75-$90/hour, and he could work more than one contract at a time due to the flexible hours and all payments were on a 1099 basis. In 2005, Stewart was an engineer with a master of science degree from one of the top three U.S. engineering schools, and at approximately his earnings peak of 20 years beyond graduation with the masters degree.

66. In the month of January 2007, cross-defendant San Francisco Police Credit Union alleges to have given a loan of it's funds to Cross-Complainant William B. Stewart, III.

Cross-Complainant, or his agents, made one or two payments to San Francisco Credit Union, during the following months.

67. Cross-Complainants financial position changed, as the economy of the United States of America spiraled into a recession. Cross-Complainant William B. Stewart, III, and his agents no longer made payments on the unsecured, signature loan. Cross-Complainant and his agents no longer took calls from the creditor, while awaiting an improvement in Cross-Complainants financial situation. This hoped for and expected improvement in financial situation of Cross-Complainant did not happen due to delays in the issue of a government issued license to operate a particular out-of-state business, which cross-complainant now believes may have been influenced by cross-defendants SFPCU and/or San Mateo City Police, or their agents, slaves and employees, either through direct contacts or indirectly through defamatory and libelous Internet postings concerning cross-complainant William B. Stewart, III, and business enterprises he is associated with.

68. Cross-defendant SF Police Credit Union representative Ms. Debbie De Filippo, in early 2007, began making false allegations regarding Cross-Complainant William B. Stewart, III, including slandering his good name and character, and falsely claiming his employer did not exist. Ms. Debbie De Filippo caused to be written, printed, published and circulated within the law enforcement community and judiciary falsehoods about William B. Stewart, III, and his employer, Larkspur, claiming that Larkspur did not exist. Cross-complainant's employer is a registered business in the City of San Jose for the last 12 years, the same city in which cross-complainant lives. Cross-complainant William B. Stewart, III, only knows of these actions by Debbie De Filippo and the SF Police Credit Union through his court appointed attorney, Scott Concannon, through discussions of the false and fraudulent police reports that cross-defendant Ms. Debbie De Filippo made that resulted in the civil rights violations of false arrest, false imprisonment, denial of due process, and a fraudulent criminal case based on fraudulent testimony brought against William B. Stewart, III, which was later dismissed by the San Mateo County District Attorney.

69. Cross-Complainant William Bullock Stewart, III, was called by a detective of the San Mateo Police Dept. named Scott Miller in early 2007. Miller asked Cross-Complainant Stewart if his employer, Larkspur, existed. Stewart told Miller that Larkspur did exist. Miller asked Cross-Complainant Stewart if there was fraud involved in the loan application to San Francisco Police Credit Union committed by Stewart. Cross-Complainant Stewart told Miller in the same telephone conversation that there was no fraud committed by Cross-Complainant Stewart. Cross-Complainant Stewart reminded

Miller that the loan was an unsecured signature loan, and merely involved consumer credit.

70. Cross-Complainant William Bullock Stewart, III, became aware that San Mateo Police Dept. Scott Miller was coming to the city of San Jose, in Santa Clara County, from the city of San Mateo, in San Mateo County, to the residence of Cross-Complainant William B. Stewart, III, through reports from other household occupants and neighbors. Cross-defendant Miller began a stalking campaign and slander/libel campaign against Cross-Complainant William B. Stewart, III, for the period of approximately one full calendar year.

71. During the course of cross-defendant Miller's stalking of Cross-Complainant Stewart, Cross Defendant Miller contacted and told other individuals living in Cross-Complainant Stewart's household that "Stewart better pay his debt or things would only get worse."

72. Cross-defendant Miller sought to intimidate Cross-Complainant Stewart's household members by leaving his business card with them, and telling them to have Cross-Complainant Stewart call Cross-defendant Miller or things would only get worse.

73. Cross-defendant Miller also sought to intimidate Stewart's household members by telling them that Stewart better call the credit union.

74. Cross-defendant Miller showed members of Cross-Complainant Stewart's household papers resembling telephone bills. Cross-defendant Miller then asked household members to confirm telephone numbers of Cross-Complainants for illegal wiretap purposes and invasion of privacy. Cross-defendant Miller approached neighbors about Stewart and slandered Cross-Complainant Stewart's good name and reputation.

75. Cross-Complainant Stewart wrote a letter and sent it to each member of the San Mateo city council, and the San Mateo City Police Chief, dated July 31, 2008, warning the Cross-defendants in their official and private capacities of Det. Scott Miller, San Mateo City Police Dept.'s illegal activities, which were outside the scope of his job description or the law. The letter described the stalking, invasion of privacy, lack of existence of any crime committed by Stewart, illegal and unfair credit collection practices of the Cross-defendant Detective Scott Miller. Stewart wrote that Cross-defendant Miller needed to be fired or sent for retraining. Cross-Complainant Stewart wrote that Cross-defendant Miller did not understand that the United States of America has never had debtors prisons, and that the matter involved an unsecured signature loan debt that did not involve any fraud on the part of Cross-Complainant Stewart, and that

the consumer debt would be paid when Stewart's financial position changed. The Cross-defendant City of San Mateo and the Cross-defendant San Mateo Police Chief ignored Stewarts letter and never answered it.

76. Cross-defendants irresponsibly continued to allow, encourage or ignore Cross-defendant Detective Scott Millers continued stalking, invasion of privacy, slander and harassment of Cross-Complainant Stewart.

77. This continued dehumanization of William B. Stewart, III, led to:

    a. further abuses and violations of Stewarts civil rights and

    b. vicious assault and battery of an elderly woman (Rosalie Aubree Guancione) by the police of two city police departments one week after her knee surgery, and

    c. continued slander of the name Stewart which is used in several business enterprises and by many individuals personally, who have a claim again the cross-defendants, and

    d. false claims of warrant to enter the house at 1461 Forrestal Ave., where the unjustified home invasion was conducted by police officers of both the San Jose and San Mateo City Police Departments.

78. The cross defendant SFPCU acting through it's officers, managers, employees and agents caused to be written, printed, published, and circulated falsehoods concerning Cross Complainant William B. Stewart, III, and his employer, Larkspur, to various law enforcement agencies and the judiciary of San Mateo County and other unknown government entities and possibly including insurance companies.

79. Repeated court filings in both Santa Clara County and San Mateo County by Scott Miller, the San Mateo Asst. District Attorney, Debbie De Filippo, Spencer Scheer, the Scheer law firm on their own (to increase fees and prevent legitimate discharge of the debt through US Bankruptcy Court) and on the behalf of San Francisco Police Credit Union, their insurers of the debt, and the third party true owners of the debt who are as yet unidentified, libeled Cross-Complainant William B. Stewart's good name. These court filings were all created or instigated by SF Police Credit Union and its agents, servants and employees. William Bullock Stewart, III's name and image is used in business enterprises, both for profit and non-profit. The Stewart name is well known, as a very honest, proud and reputable name, that stands for service for over one thousand years, and it suffers both in reputation and financial value when slandered or libeled by

Cross-defendants Detective Miller, and other Cross-defendants who are servants, agents or employees of the San Francisco Police Credit Union, including Ms. Debbie De Filippo.

80. Cross-defendants Jonathon Seigel, Mr Spencer P. Scheer, Scheer Law Group, LLP, Detective Scott Miller and Ms. Debbie De Filippo maliciously and negligently libeled Cross-Complainant Stewart and his employer, Cross-Complainant Larkspur, in various court filings in Santa Clara County in California Sup. Ct., Civil Division, on or before July 2007, and continue to do so.

81. Cross-defendants Jonathon Seigel, Mr Spencer P. Scheer, Scheer Law Group, LLP, Detective Scott Miller and Ms. D. Filippo maliciously and negligently libeled Cross-Complainant Stewart and his employer, Cross-Complainant Larkspur, in various police reports, communications to law enforcement officers, court filings, and court representations in San Mateo County in California Sup. Ct., Criminal Division, on or before January 2008. These actions were done secretly and surreptitiously from Cross-Complainants knowledge by Judge Gerald Buckwald.

82. Cross-Complainant Stewart made a bonafide offer telephonically to pay the debt claimed by the Cross-defendant San Francisco Police Credit Union on or about February 12, 2008, to Cross-defendant agent and representative Jonathon Seigel, to be paid 150 days thereafter. Cross-defendant Jonathon Seigel, acting as a representative, agent and employee, of Cross-defendant creditor, stated to Cross-Complainant Stewart that creditor San Francisco Police Credit Union agreed to this offer. The offer tendered by Cross-Complainant Stewart did not include payment of court costs or attorney fees of the credit union.

83. A Judge of the Superior Court, County of San Jose, had already specifically ordered that payment of attorney fees to Cross-Defendant by Cross Complainant Stewart is denied to SFPCU.

84. Cross-defendant Seigel sought to defraud Cross-Complainant Stewart, by writing a stipulation that added payment of cross-defendants legal fees after the judges order that they not be paid by Stewart, without consent of Cross-Complainant Stewart. Seigel's same text of stipulation claimed falsely that Stewart had given input and agreed to those terms. When Stewart did not agree to that change in the terms of offer to tender payment, Cross-defendant Seigel falsely claimed that Stewart reniged on the bonafide offer tendering payment. Under Title 15 USC 1692, the creditor must now forgive the debt completely.

85. Cross-defendants had in January 2008, prior to entering into new contract with Cross-complainant Stewart in February, and unknown to plaintiff Stewart prior to false arrest in March 10, 2008, had already borne false witness and entered false testimony and false reports to cause Cross-complainant Stewart to be falsely arrested and falsely imprisoned in March 10, 2008, and assault and battery of Rosalie A. Guancione on March 10, 2008.

86. Cross-defendants Det. Miller and Ms. Debbie De Filippo maliciously and negligently libeled Cross-complainant Stewart and his employer, Cross-complainant Larkspur, in various court filings in San Mateo County, which resulted in incidents of false arrest and imprisonment of cross-defendant Stewart for 13 days, and assault and battery against cross-defendant Guancione only one week after a knee surgery and resulting in significant further knee damage, and associated libel and business losses to Stewart University of America and other business interests involved with Cross-complainant Stewart.

87. Police officers arrested Cross-Complainant William B. Stewart, III, on March 10, 2008, on the request, counsel, and command of Cross-Defendant Debbie De Filippo.

88. This arrest was made without warrant or other legal process and was unlawful, in that no crime had been committed and in that there was no reason or cause for belief that Cross-Complainant had committed any crime.

89. In performing all of these acts, Cross-Defendants were acting willfully and maliciously.

90. While under arrest and deprived of his liberty, Cross-Complainant William B. Stewart, III, was taken to a police station, fingerprinted and "booked," that is to say, Cross-Complainant's name and pedigree were entered on the police records according to the police practice on the arrest of criminals; and two charges entered that the Cross-Complainant had been arrested for fraud and theft, as a thief.

91. Prior to this arrest, Cross-Complainant William B. Stewart, III, had enjoyed a good reputation in and about the City of San Jose, particularly for honesty.

92. In order to obtain his release from this arrest and imprisonment, plaintiff was required to and did employ private defender counsel and was required to expend additional sums of money as well.

93. Pictures were taken during the home invasion on or about 7 AM on March 10, 2008, as were voice recordings of the entire incident, by agents and employees of Cross

Defendants at the direction of other agents, employees, managers, and officers of Cross Defendants, in the course and scope of their employment, inside the home of Cross Complainants William B. Stewart, III; Aubree Guancione; and Anthony Guancione, III.

94. Pictures taken through this criminal invasion of the Cross-complainant private home are believed to have been subsequently published and printed in law enforcement files and reports and other third party files, such as insurance companies, and given to SFPCU investigators, and circulated within those entities, also without the knowledge, permission or consent of plaintiff.

95. For the purpose of being able to overhear the conversation inside Cross-complainant home, cross-defendant, its officers, managers, agents, and employees, caused and directed a person, believed Det. Dave Peruzzaro, San Mateo Police Dept., and possibly another San Jose Police Dept. Officer, to enter Cross-complainant home with an electronic device and a concealed radio transmitter or recorder. Cross-complainants believe that cross-defendants also transmitted and overhead cross-complainants without the knowledge, permission, or consent of Cross-complainant.

96. The cross-defendant acting through its officers, managers, agents and employees, invaded the cross-complainants right of privacy by willfully and maliciously causing, directing, and participating in the entry into cross-complainants home for the purpose and with the intent of kidnapping , eaves dropping, procuring materials and photographs, and information regarding cross-complainants and cross-complainants private activities so that these materials, photographs, voice recordings and information could be used for publication by cross defendant

97. Stewart was denied a petition for Habeus Corpus by the Santa Clara County Superior Court Judge Paul Bernal, despite his unlawful arrest and extradition from Santa Clara County, and his false imprisonment in both Santa Clara County and San Mateo County. This action is believed to have been decided for the judge by the Santa Clara County District Attorney's Office, as the petition was delayed from March 10 filing until April 4, 2008 ruling.

98. Officers of the San Mateo Police Department and the San Jose Police Department forced entry into the residence at 1461 Forrestal Avenue at 7 AM on March 10, 2008, after first surrounding the house on all sides. Officers had been pounding on the front door, saying open up, police. Officers first falsely claimed that they just wanted to talk to Cross-complainant Stewart.

99. Stewart awakened from slumber, to the terror of police attacking his home. Stewart indicated to Guancione, who was wearing ear plugs, that there was a tremendous commotion and banging at the front door and that people were encircling the house on the property.

100. Guancione went to the door and opened it a crack after looking out the window, and asked to see a lawful judge signed warrant for search, seizure or arrest that was valid for that day and time. She was told that she did not need to see it by law enforcement officers standing on the front porch, who said if you open the door, we will give it to you. Then they held up a paper that was illegible to Guancione who is elderly and wears glasses. Guancione could see no judge's signature and saw that it was a plain piece of paper.

101. This was the point where Guancione opened the door a crack, and what appeared to be a blank paper was thrown at Cross-complainant Guancione, and she was thrown to the ground and then handcuffed. She was told there is your warrant. Guancione was crying in pain, having had knee surgery a week before.

102. Cross-complainant Stewart came out of the bedroom with hands up in his underwear from his bed. Police officers Miller, Stewart (not related to cross-complainant William Bullock Stewart, III), and their boss, Det. Dave Peruzarro, all from the San Mateo City Police Department, County of San Mateo, handcuffed William B. Stewart, III, and then escorted Stewart back into his bedroom to get some clothes to wear. It was at this point that the police officers began taking pictures of the inside of the house, and searching the bedroom.

103. Failure by cross-defendant San Francisco Police Credit Union to accept a bonafide offer of payment of the debt and instead having plaintiff falsely arrested, constitutes a forgiveness or abolition of the debt. Plaintiff Stewart requests relief from the debt under Title 3 Uniform Commercial Code 3-603 and 604, Tender of Payment.

104. Subsequent to the Santa Clara Sup. Ct. civil debt collection case filing by cross-defendants San Francisco Police Credit Union and Michael R. Sordelli, President and CEO, San Francisco Police Credit Union, for breach of contract and fraud, plaintiff Stewart wrote three letters to cross-defendant Michael R. Sordelli, in both his public and private capacity, to in accordance with 15 U.S.C. 1692g, and 1692c(c), to provide verification and validation of the claimed debt or drop the claim against Cross-complainant William Bullock Stewart, III, as required by federal law. Plaintiff Stewart pointed out to cross-defendant Sordelli in the letters that silence is acquiescence. No direct response from cross-defendant Sordelli was received by Cross-complainant

Stewart. Cross-complainant Stewart has reason to believe that the claimed debt was inaccurate.

105. Cross-defendant Sordelli did not respond to Cross-complainant William B. Stewart, III's requests for a verification and validation of the debt. Cross-defendant Sordelli had cross-defendant Seigel write to Cross-complainant Stewart to stop sending requests to verify and validate the debt.

106. Requests for verification and validation of a civil debt are a right provided to alleged debtors under 15 U.S.C., the Federal Fair Debt Collection Practices Act.

107. As a continuing member of the San Francisco Police Credit Union through the date of this court filing, plaintiff Stewart has other continuing rights to correspond directly with his credit union president and CEO, separate and distinct from his rights as a claimed debtor, or his rights as an attorney in proper persona involved in civil litigation.

108. Failure by cross-defendant Sordelli to provide a proper verification and validation of the debt as described in Black's Law Dictionary, 6th Edition, constitutes a forgiveness or abolition of the debt. Cross-complainant Stewart requests relief from the debt under 15 U.S.C..

## ROSALIE GUANCIONE'S EXPERIENCE

109. I, Rosalie Aubree` Guancione, a disabled 55 year old woman, barely able to walk due to knee surgery within the last week and still half asleep and droggy from taking pain medication for the surgery went to answer the front door. I saw 6 men outside, and another man coming from the backyard of the residence. Two men were holding the porch screen door open as if they were ready to pounce in my home upon opening of the front door, and all of them were huddling under the porch, an area of about 5' x 8'. I could not see exactly who they were. But they saw me when I looked out the window and demanded that I open the door immediately.

110. I opened the porch window and told them I didn't call the police, and I did not need the police. First they said that they wanted to see Bill Stewart and that they just wanted to speak with him. Then as time went on, their tone, volume and urgency of demands became more aggressive. They said that they were there to arrest Bill Stewart, and they knew he was here and I had better open the door, or they would break it down.

111. I asked if they had a warrant or similar to show me. They then all groaned, rolled their eyes and shook their heads. I also asked why they were there to arrest Bill. They

answered that he had felony charges against him and they just wanted to talk to him.
Again I asked them if they had a warrant. They pressed against the screen of the
window a plain white 8 ½" x 11" piece of regular white paper, with some printed
information on it in font type size of approximately 10-11point, which took up only one
fifth of the page approximately 3" x 6" at the left hand top area. This plain white paper
had no judge's signature on it, it did not say warrant clearly on it so it could be read
easily, and so I did not believe them. In fact, I could not read the paper thru the screen
at all.

112.    Then surprisingly, detective Miller of the San Mateo Police Department himself
popped his head directly in front of me at the window behind the screen and said,
*"Remember when I was here last time, I told you that I would be back and make things
a lot worse! Remember? Well here I am"* I think he felt he was speaking with another
person in the household--Because, I never spoke to detective Miller in person at any
location.

113.    So I told them I would open the door and wanted to see the warrant, and they agreed
to show me it.  When I opened the door, one of the men put his foot in the door and
then began pushing on it without showing me warrant or any paper or information as he
had agreed to do. So I pushed back. Then more men outside the door pushed harder and
pushed the door open and they came running in. Two San Jose policemen brutally and
roughly grabbed me, and man handled me by twisting my hands viciously and with
brute force behind my back and forcefully pushing me down to the floor. I told them
that they were hurting me on my hands where I just had IV needles in my arms and
hands from the week prior from knee surgery, and I needed to sit down because I just
had knee surgery, and I could not stand up and or twist around as they were physically
pushing and forcing me down to my knees. They didn't care. They just kept
demandingly saying, *"Come 'ere you – Get down!"* They pushed me very brutally and
roughly to my knees on my hardwood floor in my dining room, approximately 4 feet
away from the front door where they had originally entered. There was a chair less than
2 feet away but they would not let me sit on it or help me from my knees to get to the
chair. They just kept pushing me to the floor and pulling and twisting my hands and
arms behind my back. They hand cuffed me extremely roughly and kept twisting my
wrists and still would not let me sit down. Finally I got off the floor, on my own as best
as I could with my swollen knee, and made my way to the chair approximately 3 feet
away now, took off the hand cuffs and handed them back to them.

114.    At this time, I took off the hand cuffs and handed them back to the policemen and
they were very angry with me.  And, asked me how I got the cuffs off. I told them that
they did not need to cuff me in the first place. I just needed to sit down when they kept

brutally and roughly pushing me around . I also told them again about the surgery on
my knee only one week ago and I needed to sit in the chair not be on my knees on the
floor where they had pushed me down. One policeman said, *"Boy she's a piece of
work!"* to Bill Stewart, but I over heard him say it.

115.  Bill Stewart saw how the police had man handled me because he was brought out of
      the back room of the residence, still in his underwear and hand cuffed him less than 20
      feet away from where I was.

116.  The San Mateo police told Bill Stewart they had a warrant for his arrest and were
      arresting him for Grand Theft. He was not read his rights at all then upon the arrest.
      They then let him get dressed and they took him out of the residence and brought him
      to the San Jose jail.

## WILLIAM B. STEWART, III,'s EXPERIENCE

117.  Cross-complainant William B. Stewart, III, was kidnapped at 7AM from the inside
      of his residence at 1461 Forrestal Ave., San Jose, CA, by the joint police forces, under
      color of law. Stewart overhead the officers talking and laughing as they were walking
      in the driveway of the house, and one of the San Mateo Police Officers said "boy, she is
      a piece of work."

118.  At the unmarked car parked on Forrestal Ave., Stewart, whose hands were
      handcuffed behind his back, was told that the San Mateo Police Officers could not take
      Stewart to the San Mateo County Jail unless Cross Complainant Stewart gave his
      permission. Stewart was the victim of a kidnapping and of course stated that he did not
      give his permission. The officers, Miller, Peruzarro, and Det. Stewart (no relation to
      Cross complainant Stewart) attempted to convince Cross Complainant Stewart that he
      should give his permission for the Cross-Defendants to take Stewart to the San Mateo
      County Jail. After Stewart again refused to aid his kidnappers, he was t taken to the San
      Jose Main Jail on March 10, 2008.

119.  Cross-Defendant Detective Scott Miller falsely imprisoned Cross-Complainant
      William Bullock Stewart, III, against his will and repeatedly refused and neglected to
      take reasonable and necessary action to ascertain the falsity of Cross-complainant's
      imprisonment. This Cross-Defendant Scott Miller, could have during the duration of
      Cross-Complainant Stewart's false imprisonment, ascertained that Cross-Complainant
      Stewart was being falsely imprisoned had the Cross Defendant Det. Scott Miller
      exercised reasonable diligence in performing his duties and not repeatedly refused to

make reasonable and necessary factual investigation of the charges made against the Cross-Complainant William B. Stewart, III.

120. Cross Complainant Stewart was held in an initial holding cell with telephones until approximately 11 AM, then switched to another holding cell until approximately 3 PM, and then another holding cell until approximately 6 PM. A social worker revealed to Stewart that he had been categorized as extremely violent, which Stewart is not violent and has never been convicted of any violent crimes ever.

121. Approximately 6 PM, Stewart was transferred to an approximately 18 man cell. Stewart remained there other than going en mass to breakfast on March 11, 2008 and picking up a tray en mass for another meal.

122. On or about 11 AM on March 11, 2008, Cross complainant Stewart was re-kidnapped by the San Mateo County Sheriffs Deputies Bell and Johnson, Badge #871, 566, placed in waste and ankle chains and taken to the San Mateo County Jail in Redwood City, in a white van with smoked windows, appearing unmarked.

123. When Cross complainant Stewart arrived at the San Mateo County Jail, at approximately noon on March 11, 2008, he was given a brief interview by the kidnapper / transporter Deputy Bell, a blonde woman, who took his hand written petition for writ of habeas corpus and placed it somewhere. Cross complainant finally had it returned hours later, with no action taken on it. Another official petition had been filed the previous day.

124. Cross complainant Stewart remained in the holding cells for the next approximately 10 hours. He was moved several times, and placed with argumentative, hostile, drunk and/or stoned and/or extremely aggressive individuals, some of whom appeared to be mentally ill and without normal restraint. Stewart was unable to sit or lay down due to the other individuals in some of the cells and had to stand for hours. Stewart has a back condition and is considered a service connected back disabled veteran, who cannot generally stand, or sit, or remain in any one position for extended periods of time without extreme pain.

125. On or about 10 PM, Stewart was taken to the isolation cells where he remained the next few days. In these cells, he was allowed to come out during meals, but for at least one of these meals he was left locked in his cell, despite his calls to be let out. He was rebuked by the guard for this and told that he had slept through the mail. The jail regulations state that inmates who miss a meal will be given a sandwich, which Cross complainant Stewart was not.

126. After transfer to the cells on 4 West "Old McGuire", Stewart was subjected to physical threats on his being by mentally ill inmates who claimed that Stewart's snoring caused them to not be able to sleep. Stewart has a diagnosed condition of sleep apnea, for which he has had his soft palate and uvula removed, but still makes gasping sounds after long periods between breaths. This hostile inmate situation caused significant jeopardy to Stewart.

127. The conditions of both jails was deploreable. Stewart was placed in rooms with hostile and mentally ill inmates and ignored.

128. Stewart was told to use showers with scalding water whose temperature was unadjustable. When Stewart complained that the water was so hot that it made his skin red and welted, he was laughed at by the guards, and told that they would put in a work order, but nothing was ever done, and other guards said that if I did not like it, to not do things that would get me put here, when I was not convicted of any crime.

129. Stewart was given meals where only one meal a week had meat in it.

130. Stewart was treated with rebuke by corrections guards who assumed that anyone in the jail was guilty, even if they were awaiting trial.

131. Stewart's petition for writ of habeas corpus was ignored by Judge Paul Bernal for three weeks, from March 10, 2008 filing date until ruling on April 4, 2008. Stewart had already been released from jail on bail on the night of March 22, 2008.

132. Stewart was finally released after a bail reduction, at 11:30PM on March 22, 2008. This cost Stewart $4000 in fees to a bail bondsman for release from jail for charges that were dismissed on April 16, 2008.

133. Stewart was taken to his San Mateo County Superior Court criminal arraignment hearing in an unmarked white van, with approximately 10 other prisoners, each of us was in waist chains and handcuffs and in a two piece orange jail jump suit.

134. The Cross-complainant Stewart's judge for Stewart's arraignment hearing, Judge Gruber did not identify himself as a retired commissioner, or tell Stewart that he had a right to have his arraignment heard by a full time judge.

135. Judge Gruber refused to reduce Stewart's bail from $100,000, in excess of the bail schedules for the accused crimes (which were later dismissed anyway) to a fair and

reasonable bail from the bail set in secret and based upon false testimony, by Judge Buchwald, two months before the arrest.

136. Judge Gruber refused to give Stewart an "on your own recognizance to appear" (OR) release at the time of Stewart's arraignment.

137. Stewart had been held for 57 hours already at the time of his arraignment, which is not timely. Stewart requested immediate release on this grounds, but Judge Gruber denied that also.

138. On April 16, 2008, the criminal case, which was based on false testimony of Debbie De Filippo of the San Francisco Police Credit Union, against William Bullock Stewart, III, was dismissed due to "lack of evidence" because Ms. Debbie De Filippo had lied to the police and the district attorney in claiming that Cross Complainant William B. Stewart, III's, employer Larkspur did not exist, when Det. Scott Miller admitted that Larkspur had 12 years of business licenses from the City of San Jose and 12 years of fictitious name statement filings with the County of Santa Clara.

139. Both Cross-complainant William B. Stewart, III, and Rosalie Guancione, now suffer from Post Traumatic Stress Syndrome, from the home invasion performed under color of law, but without lawful warrant. Every morning when there is a knock at the door, both cross-complainants are sent into a nervous episode. Cross-complainant Stewart was informed by his public defender that even though the criminal charges against him were dismissed that they can be recharged for a period of three years. The thought of reliving the trauma from before is completely nerve shattering for each of the two cross-complainants. Cross-complainant Stewart has sought medical care for his post traumatic stress syndrome. Cross-complainant Rosalie Guancione has sought continued medical care for her knee, after the police performed an assault and battery on her during the home invasion.

140. The San Francisco Police Credit Union wrote off the loan that they attribute to Cross-Complainant William B. Stewart, III. Since SFPCU has received a complete tax write off on the amount of the loan in 2007, SFPCU is fraudulent in continuing to claim a debt for a loss that they have taken a complete write-off for on their taxes in 2007.

141. The San Francisco Police Credit Union is believed to have been completely reimbursed through insurance claims paid on the loan that SFPCU attributes to Cross-Complainant William B. Stewart, III. Since SFPCU has received a complete reimbursement and pay-off on the amount of the alleged loan, SFPCU is fraudulent in

continuing to claim a debt for a loss that they have been completely reimbursed for by an insurance claim.

142.  The San Francisco Police Credit Union does not ever loan it's own money, therefore, SFPCU has never lost money on the alleged loan that SFPCU attributes to Cross-Complainant William B. Stewart, III. Since SFPCU is not the true creditor, they are not entitled to any payment for the alleged loan. SFPCU is fraudulently acting as a money laundering organization in violation of numerous federal statutes.

143.  The San Francisco Police Credit Union annual financial reports before and through 2006 have independent auditor statements for years from Marlow & Massoni, Certified Public Accountants, San Francisco, who state that the San Francisco Police Credit Union does not produce accounting statements in accordance with the Industry Audit Guide for Audits of Credit Unions issued by the American Institute of Certified Public Accountants. The SFPCU's fraudulent accounting statements have fraudulently misled investors, lenders and members for years, through exaggerations of equity by $389,217,947.00 for the annual financial statements year ended 2005, or as much as ten times their true equity. By being greedy and falsely claiming fraud against William Bullock Stewart, III, in order to prevent his lawful discharge of an alleged loan through US Bankruptcy Court and to inflate possible winnings in a court case through punitive and exemplary damages, even though SFPCU and its agents, employees and slaves knew that their claims were false and fraudulent, the SFPCU became open to scrutiny. The dirty little secret accounting tricks of SFPCU routinely producing fraudulent annual financial statements might not have otherwise come out in public documents.

## FEDERAL TORT CLAIMS ACT

144.  The actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD set forth above, constitute assault and battery in violation of California common law. Under the Federal Tort Claims Act, the cross-defendants: City of San Jose, City of San Mateo, Police Dept. of San Jose, and Police Dept. of San Mateo, are each and severally liable to the cross-complainant Rosalie Guancione for the unlawful actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD, as they were each acting within the scope of their employment as a law enforcement officer for their city.

145.  The actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD set forth above, constitute unlawful detention of Rosalie Guancione in violation of California common law. Under the Federal Tort Claims Act, the cross-defendants: City of San Jose, City of San Mateo, Police Dept. of San Jose, and Police Dept. of San Mateo, are each and severally liable to the cross-complainant Rosalie Guancione for the unlawful actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD, as they were each acting within the scope of their employment as a law enforcement officer for their city.

146.  The actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD set forth above, constitute false arrest and false imprisonment in violation of California common law. Under the Federal Tort Claims Act, the cross-defendants: City of San Jose, City of San Mateo, Police Dept. of San Jose, and Police Dept. of San Mateo, are each and severally liable to the cross-complainant William B. Stewart, III, for the unlawful actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD, as they were each acting within the scope of their employment as a law enforcement officer for their city.

147.  As a direct and proximate result of the combined negligence of Cross-Defendants' agents, servants and employees, Cross-Complainants have suffered post traumatic stress syndrome, permanent damage to a knee joint, damage to reputation that has interfered with ability of associated corporations to secure business licenses in multiple locales, and has therefore become as a direct and proximate result, disabled from the knee injury, partially disabled from the post traumatic stress syndrome, and other damages. As a result of these injuries Cross-complainants in aggregate have suffered pain of mind and body, permanent disability, and disfigurement, and have been damaged as a group in the aggregate sum of at least $500,000,000.

148.  As a result Cross-complainant Rosalie Guancione will incur medical expenses , will lose earnings of approximately $4,000,000, will suffer pain of mind and body, and will be permanently disabled, disfigured, and suffer a substantial loss of earning capacity, all in a total sum of at least $8,000,000.

149.  The actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD set forth above, constitute false arrest and false imprisonment in violation of California common law. Under the Federal Tort Claims Act, the cross-defendants: City of San Jose, City of San Mateo, Police Dept. of San Jose, and Police Dept. of San Mateo, are each and severally liable to the cross-complainant William B. Stewart, III, for the unlawful actions of Detectives Peruzarro, Miller and Stewart (not related to Cross-complainant Stewart) of the San Mateo City Police Department and other unidentified officers of both the San Mateo PD and San Jose PD, as they were each acting within the scope of their employment as a law enforcement officer for their city

150.  As a result of all of the acts described above, Cross-Complainant William Bullock Stewart, III, was greatly humiliated and subjected to mental and bodily distress for which Cross-Complainant Stewart requests damages in the sum of $50,000,000 directly to him. Bear in mind that the Cross-Defendants attempted to completely ruin the life of, and steal the liberty of William Bullock Stewart, III, former U.S. Army Captain and Operation Iraqi Freedom veteran, who has eleven years of graduate school training.

151.  Other individual claimants with the same name (who claim losses via corporations and via slander and libel) and separate from various corporate persons whose loses are far greater. Specifically the losses involving the two schools that have been anonymously and secretly attacked behind the scenes on websites and through regulatory agencies. (see letter from Jeffrey Brunton, Office of Consumer Protection, State of Hawaii, that cites this case to a prospective attorney for Stewart University of America). Note: Jeffery Brunton filed his own case to permanently block operation of Stewart University of America in Hawaii, claiming a danger to the public, just one week after the non-profit paid for it's business license and before it had even established an office, campus or accepted one dollar from state residents. These corporate losses are in the $400s of millions of dollars;

152.  Other individual claimants with the same name (who claim losses via corporations and via slander and libel) Dr. William Bullock Stewart, Jr.; William Bullock Stewart, IV; each suffered humiliation, embarrassment and defamation of each of their characters and reputations, which will in part, cause each of them future loss of earnings and restrict each of their opportunities to hold respected and trusted positions in each of their employments and communities. Dr. W.B. Stewart, Jr., has been past citizen of the year, and serves on the state grand jury. Each of their damages are $5,000,000 each;

153.  Other individual claimants with the same Stewart family name who are first degree relatives of William Bullock Stewart, III, include: Rosalie M. Stewart; James T. Stewart, Carol S. Stewart, Jenn Stewart, Lance Arthur Stewart, Shaena Stewart, Alexandra Stewart, Ronald S. Stewart, John R. Stewart, Marie Stewart; each suffered humiliation, embarrassment and defamation of each of their characters and reputations, which will in part, cause each of them future loss of earnings and restrict each of their opportunities to hold respected and trusted positions in each of their employments and communities. Ronald a West Point Grad and Fullbright Scholar, John a Colonel, Rosemary a Lieutenant Colonel, Marie a Marriage and Family Counselor, Carol a teacher, Shaena a chemical engineer, James a Navy Captain and Annapolis Grad, Rosalie a teacher. Each of their damages are between $2,500,000 and $4,000,000 each, and include their lifetime corporate losses through the family corporations and non-profit opportunities;

154.  Other individual claimants are the home owner at 1461 Forrestal Ave., San Jose, County of Santa Clara, CA, where the home invasion without warrant took place; Anthony Guancione III suffered community humiliation, embarrassment and defamation of his character and reputation, which will in part, cause him future loss of earnings and restrict his opportunities to hold respected and trusted positions in his employment and community. He was not a party to any of the law suits, but he was stalked for over a year, his home was surveilled for over a year, his telephone was illegally wiretapped for over a year, and his privacy was violated. He was repeatedly harassed by Cross-Defendant Detective Scott Miller. His damages are between $7,500,000 and $10,000,000;

155.  Details of corporate losses computations will be described in detail at the end of the trial in that phase of the proceedings.

## FEDERAL THEORIES OF RECOVERY

156.  The actions and omissions described above, engaged in under color of state authority by the cross-defendants (including cross-defendant Counties and Cities), sued as persons responsible because of their authorization, condonation, and ratification of the acts of their agents, deprived the Cross Complainants of their rights secured to them by the Constitution of the United States, including, but not limited to, the cross-complainant's:

a.  First Amendment right to freedom of expression;

b. Fourth Amendment right to be free from unlawful seizure of each of their persons;

c. Fifth and Fourteenth Amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police; and

d. Eighth Amendment right to be free from cruel and unusual punishment.

## STATE LAW THEORIES OF RECOVERY

157. On April 16, 2008, the cross-complainant caused a written verified Notice of Claim to be filed with and served on the proper officers, agents, and employees of the cross-defendant Cities of San Jose and San Mateo, and Counties of Santa Clara and San Mateo, pursuant to the claims statutes governing these cases. True and correct copies of the Notices are part of the court record and are incorporated by reference in this complaint.

158. Cross-complainants claim has been denied by operation of law because less than 30 days have elapsed since the service of the Notice of Claim, and adjustment or payment of the Claim has been neglected or refused in each instance.

159. The acts and conduct alleged above constitute actionable torts under the laws of the State of California, including the tort of:

a. False arrest and imprisonment,

b. Assault and battery,

c. Malicious prosecution,

d. Abuse of process,

e. Negligence, and

f. Gross negligence,

CROSS-COMPLAINT, Stewart v SF Police CU, Case #C08 02996,
United States District Court, Northern District of California, San Jose Division

## PRAYER

Cross-complainants request judgement against the Cross-defendants, jointly and severally, and demand the following relief:

A. Declaratory judgement that the acts of the County of Santa Clara, the County of San Mateo, the City of San Jose, the City of San Mateo, the San Jose Police Department, and San Mateo Police Department, their agents and employees violated the Cross-Complainants due process;

B. Compensatory damages and actual damages to Cross-Complainants in an amount determined by the trier of fact or jury as sufficient to compensate the Cross-Complainants for the injuries described in this complaint;

C. Pain and suffering damages in the the court sees fit.

D. Consequential damages, including future business losses, in the amount the court sees fit.

E. Punitive or exemplary damages to Cross-Complainants in an amount determined by the trier of fact or jury as sufficient to punish each Cross-Defendant against whom these damages are awarded and sufficient to deter similar conduct in the future by these Cross-Defendants;

F. An award of reasonable costs and expenses to cross-complainants in this action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

G. An award of cross-complainants costs of bail for criminal case.

H. An award of Cross-complainants lost revenue due to inability to execute on critical government filing while falsely imprisoned.

I. Doctors and healthcare costs related to battery and emotional distress of Cross-Complainants as the court sees fit.

J. Mental and emotional distress of Cross Complainants from the post-tramatic stress syndrome caused by the home invasion, false imprisonment, and other emotional trauma related to the case and Cross-Defendant's slander, defamation and libel as the court sees fit.

K. All other relief granted to Cross-Complainants that is appropriate, just and proper under the circumstances.

Dated: *June 16, 2008*

_____
William B. Stewart, III

_____
William B. Stewart, III, for Royal House of Stewart Corporation, Inc.

_____
Rosalie A. Guancione

_____
R. A. Guancione, Pres. And CEO for Stewart University of America

_____
R Aubree Guancione for General Innovations West, Inc.

_____
Elaine Cannella for General Innovations West, Inc., sole member, General Innovations West, LLC

CROSS-COMPLAINT, Stewart v SF Police CU, Case #C08 02996,
United States District Court, Northern District of California, San Jose Division