TIMOTHY J. MCCAFFERY, State Bar No. 154668
tjm@llcllp.com
LEORA R. RAGONES, State Bar No. 215423
lragones@llcllp.com
LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541
Telephone: (510) 433-2600
Facsimile: (510) 433-2699

Attorneys for Plaintiff
SAN FRANCISCO POLICE CREDIT UNION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO POLICE CREDIT UNION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BULLOCK STEWART III; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 5:08-cv-02996 RS<br><br>**PLAINTIFF SAN FRANCISCO POLICE CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT**<br><br>Date: August 20, 2008<br>Time: 9:30 a.m.<br>Ctrm: 4 |

00525-37991 LRAGONES 556603.1                                   Case No. 5:08-cv-02996 RS

PTF SFPCU'S NOT OF MOTION AND MOTION TO DISMISS; MEMO OF P&AS IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AN MOTION TO DISMISS ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I. SUMMARY OF ALLEGATIONS ..................................................................................... 2

    A. Allegations Related To William Bullock Stewart III ............................................. 2

    B. Allegations of Rosalie Guancione ........................................................................... 3

    C. Allegations of Other Claimants ............................................................................... 4

II. SUMMARY OF ARGUMENT ......................................................................................... 5

III. LEGAL ARGUMENT ........................................................................................................ 6

    A. Standard of Review for Motion to Dismiss ............................................................ 6

    B. The Claims of Anthony Guancione and the Stewart Claimants Other than William B. Stewart, III Must Be Dismissed Because the Parties Are not Properly in the Case and Their Claims Lack Merit ................................................. 6

    C. The Claims of the Business Entity Claimants Must Be Dismissed Because the Parties Are not Properly in the Case and Their Claims Lack Merit ................. 7

    D. Ms. Guancione Has Not Stated Any Causes of Action Against SFPCU ................ 8

    E. Mr. Stewart's Federal Civil Rights Claims Fail as no Cognizable Interest Under §1983 Has Been Identified and the Vague, Conclusory Allegations of SFPCU's participation in Civil Rights Violations Are Insufficient .................... 8

    F. All But One of Mr. Stewart's State Law Claims Are Barred by the Litigation Privilege ................................................................................................ 11

    G. Mr. Stewart's Malicious Prosecution Claim Fails to State Sufficient Facts to Support a Cause of Action ................................................................................ 12

IV. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page

**Federal Cases**

Balistreri v. Pacifica Police Department, (9th Cir. 1990) 901 F.2d 696 .................................. 6, 9

Bell Atlantic Corp. v Twombly, ___ U.S. ___, 127 S.Ct. 1955 ................................................. 6

Collins v. Womancare, (9th Cir. 1989) 878 F.2d 1145 .............................................................. 10

Hughes v. Meyer, (7th Cir. 1989) 880 F.2d 967 ........................................................................ 10

Knoetze v. U.S. Dep't of State, (5th Cir. 1981) 634 F.2d 207 ................................................... 10

Leeds v. Meltz, (2d Cir. 1993) 85 F.3d 51 .................................................................................. 6

Pena v. Gardner, (2d Cir. 1993) 976 F.2d 469 ........................................................................... 9

Pomerantz v. County of Los Angeles, (9th Cir. 1982) 674 F.2d 1288 ....................................... 9

West v. Atkins, (1988) 487 U.S. 42 ............................................................................................ 9

**State Cases**

Hagberg v. California Federal Bank FSB, (2004) 32 Cal.4th 350 ........................................... 11

Sangster v. Paetkau, (1998) 68 Cal.App. 4th 151 .................................................................... 12

Silberg v. Anderson, (1990) 50 Cal.3d 205 ......................................................................... 11, 12

Williams v. Hartford Ins. Co. (1983) 147 Cal.App. 3d 893 ..................................................... 13

**Federal Statutes**

42 United States Code §1983 ................................................................................................ 3, 8

**State Statutes**

California Civil Code §47(b) ................................................................................................... 11

**Federal Rules**

Federal Rules of Civil Procedure 11(a) ..................................................................................... 6

Federal Rules of Civil Procedure 12(b)(6) ............................................................................. 1, 6

Federal Rules of Civil Procedure 12(e) ..................................................................................... 1

**Local Rules**

N.D. Local Rule 3-9 ............................................................................................................... 6, 7

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

# NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 20, 2008 at 9:30 a.m. in Courtroom 4 of the United States District Court, Northern District, San Jose Division, located at 280 S. First Street, San Jose, California, or as soon thereafter as the matter may be heard, Plaintiff San Francisco Police Credit Union ("SFPCU") will move this Court for an order to dismiss this action.

This motion is made and based upon this Notice, the Memorandum of Points and Authorities in support thereof, the Declaration of Leora R. Ragones, submitted herewith, and the pleadings and any other documents on file, as well as any other evidence produced at the hearing of the matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Cross-complainants William B. Stewart, III, Rosalie Guancione, and various other individuals and entities improperly filed a "counter-claim/cross-claim" against SFPCU and numerous other defendants alleging civil rights violations and state tort claims. In addition to basic pleading deficiencies, the counter-claim/cross-claim fails as a matter of law as to SFPCU. Accordingly, SFPCU moves to dismiss this case.[1]

Moreover, none of the alleged causes of action are pled with sufficient particularity, and the allegations that do appear in the lengthy complaint are largely incoherent. Thus, if the counter-claim/cross-claim is not dismissed by way of FRCP 12(b)(6), SFPCU moves, in the alternative, for an order requiring a more definite statement concerning the allegations and claims asserted against them pursuant to FRCP 12(e).

///

///

---

[1] Among other reasons, the "counterclaim/cross-claim" is improper because plaintiffs inappropriately removed the underlying case to this Court. SFPCU initially filed a state-law based collections and fraud action against William B. Stewart, III in state court. Shortly before trial, Mr. Stewart removed the case to this Court and filed the present counter-claim/cross-claim along with other claimants against the credit union and third parties without obtaining leave to do so. As the removal was improper for several reasons, the credit union will be filing a motion to remand the case within the time period required. Despite the irregularities, SFPCU will address the substance of the counterclaim because it has no merit and should be dismissed outright.

00525-37991 LRAGONES 556603.1        1        Case No. 5:08-cv-02996 RS

# I. SUMMARY OF ALLEGATIONS

## A. Allegations Related To William Bullock Stewart III

The vast majority of the 159 paragraph counterclaim/cross-claim appears to relate to the arrest of William B. Stewart, III ("Mr. Stewart") in March 2008 and events leading up to and following the arrest.

He claims that police officers came to his home on March 10, 2008 at 7:00 a.m. (Counterclaim ("CC") ¶98). He claims he was awakened by a "commotion and banging" on his front door, and was then arrested. Subsequent to his arrest, Mr. Stewart was incarcerated for approximately 12 days.

As it relates to SFPCU, the counterclaim contains few allegations directly against the credit union. Mr. Stewart alleges that in January 2007, he obtained a loan from SFPCU. (Counter-claim ("CC") ¶66). He claims he made "one or two" payments on the loan before he could no longer pay. (CC ¶¶66-67). He then "no longer took calls" from the credit union. (CC ¶67) Mr. Stewart claims that thereafter, the credit union made "false accusations" to the "law enforcement community" claiming that Mr. Stewart's employer did not exist. The credit union allegedly made "false and fraudulent" police reports that "resulted" in alleged civil rights violations by law enforcement. (CC ¶68). The counterclaim also states that:

> 78. The cross defendant SFPCU acting through it's (sic) officers, managers, employees and agents caused to be written, printed, published, and circulated falsehoods concerning Cross Complainant William B. Stewart, III, and his employer, Larkspur, to various law enforcement agencies and the judiciary of San Mateo County and other unknown government entities and possibly including insurance companies.

> 79. Repeated court filings in both Santa Clara County and San Mateo County ... on the behalf of San Francisco Police Credit Union...libeled Cross-Complainant William B. Stewart's good name. These court filings were all created or instigated by SF Police Credit Union and its agents, servants and employees. William Bullock Stewart, III's name and image is used in business enterprise, both for profit and non-profit. The Stewart name is well known as a very honest, proud and reputable name that stands for service for over one thousand years, and it suffers both in reputation and financial value when slandered or libeled by Cross-defendants ...who are servants, agents or employees of San Francisco Police Credit Union...

Although not entirely clear, if one extrapolates broadly from the vague allegations in the counterclaim, the crux of Mr. Stewart's complaint against the credit union seems to be that the alleged conduct of the police officers and judiciary resulted from SFPCU's report to the police that he committed fraud regarding the loan he obtained from the credit union by referring to an employer that the credit union believed did not exist. He claims that based on the alleged actions of SFPCU, Mr. Stewart was arrested and incarcerated, and Mr. Stewart was denied fundamental rights. (CC ¶¶54-57). He claims the credit union and other defendants violated his "First, Fourth, Fifth, Sixth, and Fourteenth Amendment Rights under the United States Constitution in violation of 42 USC §1983." (CC ¶47). Mr. Stewart does not specify which counter or cross defendants violated his rights, but states generally that the acts of cross-defendants included unlawfully seizing his person causing him an unlawful detention and incarceration, and violated "due process;" reporting false information to police that lead to Mr. Stewart's arrest and uttering false testimony to a judge; failing to disclose "discoverable information" to his attorney; and permitting "known perjured testimony" to be produced at trial. (CC ¶48).

After his detention for approximately 12 days, the counterclaim asserts that Mr. Stewart attended several hearings, and that the criminal charges eventually were dismissed on April 16, 2008. (CC ¶54).

Mr. Stewart claims that he suffers from "Post Traumatic Stress Syndrome" from the "home invasion" (CC ¶139), and was humiliated. (CC ¶150). He seeks damages of $50 million.

### B. Allegations of Rosalie Guancione

Ms. Guancione makes no allegations whatsoever against SFPCU. The entirety of her complaint is based on the alleged actions of police officers who arrived at her home to arrest Mr. Stewart. She claims she was grabbed and pushed through her front door by two San Jose police officers. (CC ¶113). She does not claim she was arrested or detained by the police.

Significantly, there are no allegations that she ever had any contact with the credit union or any of its employees. There are no allegations that SFPCU made contact with law enforcement or instituted any form of litigation against her. Nonetheless, along with Mr. Stewart, Ms. Guancione and Anthony Guancione (who is not listed as a plaintiff, but is mentioned in CC ¶ 154

as having been damaged) claim they were denied "fundamental rights." Ms. Guancione claims damages of $8 million. (CC ¶148)

### C. Allegations of Other Claimants

No individual claimants other than Mr. Stewart, Ms. Guancione, have signed the pleading on their own behalf or appeared with an attorney. The remaining individual claimants are: William B. Stewart, Jr., William B. Stewart, IV, Jenn Stewart, Lance Arthur Stewart, Rosalie M. Stewart, Shaena Stewart, James Stewart and Carol Stewart (collectively the "remaining Stewart claimants"). There are no allegations directly against the credit union by these claimants.

The business entities that claim an interest in this case are: Stewart University of America, Larkspur, General Innovations West, and Royal House of Stewart Corp. (collectively "business entity claimants").

The sole mention of these claimants in the counterclaim is that they inexplicably were damaged because of what happened to Mr. Stewart. The business entity claimants and the remaining Stewart claimants allege:

> 151. Other individual plaintiffs with the same name (who claim losses via corporations and via slander and libel) and separate from various corporate persons whose loses (sic) are far greater. Specifically the losses involving the two schools that have been anonymously and secretly attacked behind the scenes on websites and through regulatory agencies. (see letter from Jeffrey Brunton, Office of Consumer Protection, State of Hawaii, that cites this case to a prospective attorney for Stewart University of America). Note: Jeffrey Brunton filed his own case to permanently block operation of Stewart University of Hawaii, claiming a danger to the public, just one week after the non-profit paid for it's (sic) business license and before it had even established an office, campus or accepted one dollar from state residents. These corporate losses are in the $400s of millions of dollars;
>
> 152. Other individual claimants with the same name (who claim losses via corporations and via slander and libel) Dr. William Bullock Stewart, Jr.; William Bullock Stewart, IV; each suffered humiliation, embarrassment and defamation of each of their characters and reputations, which will in part cause each of them future losses of earnings and restrict each of their opportunities to hold respected and trusted positions in each of their employments and communities. Dr. W.B. Stewart, Jr. has been past citizen of the year, and serves on the state grand jury. Each of their damages are $5,000,000 each.

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

> 153. Other individual claimants with the same Stewart family name who are first degree relatives of [Mr. Stewart], include [the remaining Stewart claimants], Alexandra Stewart, Ronald S. Stewart, John R. Stewart, Marie Stewart; each suffered humiliation, embarrassment and defamation of each of their characters and reputations, which will in part cause each of them future losses of earnings and restrict each of their opportunities to hold respected and trusted positions in each of their employments and communities… Each of their damages are between $2,500,000 and $4,000,000 each and include their lifetime corporate losses through the family corporations and non-profit opportunities.

Finally, "Anthony Guancione III" the alleged homeowner where claimants allege "the home invasion without warrant took place" also fails to make any allegations whatsoever against the credit union. Nonetheless, the counterclaim states he:

> 154. …suffered community humiliation, embarrassment and defamation of his character and reputation, which will in part, cause him future loss of earnings and restrict his opportunities to hold respected and trusted positions in his employment and community. He was no a party to any of the law suits, but he was stalked for over a year, his telephone was illegally wiretapped for over a year, and his privacy was violated. He was repeatedly harassed by Cross-Defendant Detective Scott Miller. His damages are between $7,500,000 and $10,000,000.

As evidenced by the above allegations, even when reviewed in the light most favorable to claimants, their claims against SFPCU are unfounded and tenuous, at best, and must fail as a matter of law.

## II.    SUMMARY OF ARGUMENT

- The claims by the remaining Stewart claimants and Anthony Guancione fail because (1) they have not appeared on their own behalf, but cannot appear through another pro se plaintiff, and, as a result, are not proper parties to the case; and (2) they do not allege any specific causes of action or conduct by SFPCU against them, and, therefore, there are insufficient facts to support any claims against the credit union by these claimants;

- The claims by the business entity claimants fail because (1) they have not appeared through an attorney, but cannot appear pro se, and, therefore, are not proper parties to the case; and (2) they do not allege any specific causes of action or conduct by SFPCU against them, and, therefore, there are insufficient

facts to support any claims against the credit union by these claimants;

- Ms. Guancione's claims fail because she does not allege any specific causes of action against the credit union nor any facts to support any conceivable theories of recovery.
- Mr. Stewart's civil rights claims fail as no cognizable interest under §1983 has been identified and the vague, conclusory allegations of SFPCU's participation in civil rights violations are insufficient to state a cause of action.
- Mr. Stewart's state law tort claims are barred by the litigation privilege of California Code of Civil Procedure §47(b) and the malicious prosecution claim is unsupported by any facts.

### III. LEGAL ARGUMENT

#### A. Standard of Review for Motion to Dismiss

Federal Rule of Civil Procedure (FRCP) 12(b)(6) provides that a defendant may make a motion to dismiss for "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss under FRCP 12(b)(6) the Court is required to accept as true only well-pleaded allegations. It is not required to accept conclusions of law. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1993) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."). Factual allegations must be enough to raise a right to relief above the speculative level, and there must be "plausible grounds" to support a claim for relief. *Bell Atlantic Corp. v Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1965. A dismissal pursuant to FRCP 12(b)(6) is proper where there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

#### B. The Claims of Anthony Guancione and the Stewart Claimants Other than William B. Stewart, III Must Be Dismissed Because the Parties Are not Properly in the Case and Their Claims Lack Merit

FRCP 11(a) requires that every pleading must be signed by an attorney or by a party personally who is representing himself. Northern District Local Rule 3-9(a) further provides: "Any party representing him or herself without an attorney must appear personally and may not delegate that duty to any other person who is not a member of the bar of this Court." Moreover,

1  unrepresented parties are required to know the Federal Rules and Local Rules, and are subject to
2  sanctions including dismissal if they fail to follow the Rules. Local Rule 3-9(a).

3      In the present case, of all the Stewart claimants, only William B. Stewart, III has signed
4  the pleading on his own behalf. As none of the remaining Stewart plaintiffs are represented by an
5  attorney, and they cannot as a matter of law delegate the appearance to Mr. Stewart, they have no
6  standing to appear before this Court and their claims against SFPCU must fail. Similarly,
7  Anthony Guancione, who is not listed in the caption but is allegedly a claimant, has not signed the
8  pleadings on his own behalf, nor does he appear through an attorney. Accordingly, his claims fail
9  as well.

10     More importantly, even if the remaining Stewart claimants and Mr. Guancione were given
11 the opportunity by the Court to properly appear in the case, they make no valid claims and assert
12 no causes of action against SFPCU. The totality of their claims seems to be that, for the
13 remaining Stewart claimants, because their last name is Stewart and they are related to Mr.
14 Stewart, they suffered some unspecified humiliation and damages because Mr. Stewart was
15 arrested. Regarding Mr. Guancione, the complaint acknowledges that he was not involved in any
16 litigation whatsoever, and he makes no claims against the credit union. His sole complaint seems
17 to be that he owned the house from where Mr. Stewart was arrested and, therefore, suffered
18 unspecified and vague damages based on the conduct of the police officers.

19     In short, none of these claimants have alleged that they had any contact with the credit
20 union, or that the credit union acted or failed to act in some way that allegedly caused them
21 damage. There are no causes of action pled by these claimants; indeed, there are no cognizable
22 theories whatsoever under which the credit union could be liable to these claimants. As a result,
23 SFPCU requests this Court dismiss all claims of the remaining Stewart claimants and Mr.
24 Guancione.

25     C.    **The Claims of the Business Entity Claimants Must Be Dismissed
26          Because the Parties Are not Properly in the Case and Their Claims Lack Merit**

27     A business entity party to a lawsuit before this Court may not appear on its own behalf,
28 but must appear through an attorney. *See* N.D. Local Rule 3-9. Local Rule 3-9(b) requires that a

"corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court." The business entity claimants – Stewart University of America, Larkspur, General Innovations West, and Royal House of Stewart Corp. – have not appeared in this case through an attorney. As a result, they are not proper parties to the case and their claims must be dismissed.

Moreover, even if the entities were permitted to appear through an attorney, they have alleged no viable claims against SFPCU, and the counterclaim substantively fails on that basis as well. The sole allegation by "Larkspur" against the credit union is the vague statement that the credit union circulated "falsehoods" to law enforcement agencies and the judiciary of San Mateo. (CC ¶78). The sole allegation by "Stewart University of America" is that the State of Hawaii sought an injunction against the "school" block its operation. (CC ¶151). Finally, the complaint is completely devoid of any allegations on behalf of "General Innovations West" and "Royal House of Stewart" against SFPCU or any other defendants. Accordingly, there can be no theory of liability under which the credit union could be found liable to these claimants, and their claims must be dismissed.

### D. Ms. Guancione Has Not Stated Any Causes of Action Against SFPCU

Ms. Guancione has not pleaded any causes of action against the credit union. In fact, she does not make any allegations against the credit union, or even assert that she has ever had any contact whatsoever with the credit union, its agents or employees. Accordingly, there are no plausible legal theories under which Ms. Guancione could demonstrate a viable claim against the credit union. This, her claims, whatever they may be, must be dismissed.

### E. Mr. Stewart's Federal Civil Rights Claims Fail as no Cognizable Interest Under §1983 Has Been Identified and the Vague, Conclusory Allegations of SFPCU's participation in Civil Rights Violations Are Insufficient

Mr. Stewart's counterclaim fails, on its face, to identify a viable liberty or property interest under 42 U.S.C. §1983 or to otherwise set forth with specificity what actions by SFPCU violated his constitutional rights.[2] To sustain an action under §1983, "a plaintiff must show (1)

---

[2] Although the purported causes of action of all claimants other than Mr. Stewart are addressed above, and should be dismissed with prejudice for the reasons stated previously, should the Court find that the claimants are sufficiently

that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

A defendant cannot be liable under §1983 unless that defendant "caused" or "participated in" conduct violating the plaintiff's federal rights. *Pomerantz v. County of Los Angeles*, 674 F.2d 1288, 1291 (9th Cir. 1982). Thus, a complaint which presents only generalized and vague allegations that a defendant participated in civil rights violations is insufficient to withstand a motion to dismiss. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). In addition, as §1983 applies to a person acting on behalf of the state, if the conduct involves actions taken by an individual defendant, a plaintiff must also show the individual committed the violation while "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 43 (1988).

In the present case, Mr. Stewart states in a conclusory manner that his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated, but none of the alleged misconduct attributable to the credit union constitutes a violation of these provisions. The counterclaim generally states that "cross-defendants" including SFPCU "under the color of law and with the apparent authority of the San Mateo and San Jose Police Department" and several judges, violated his rights under §1983, but fails to allege any facts to support this statement. Additionally, based on what the credit union can discern from the counterclaim, there are no "facts" or "plausible grounds" related to the credit union that could support such a claim.

Significantly, Mr. Stewart fails to allege any facts to support his baseless statement that the credit union acted "under color of the law" or with the authority of any police department or officer. Regarding the specific civil rights violations alleged, he has not stated any facts to support a claim that his First Amendment rights were violated. Moreover, the Fourth Amendment protects against unreasonable searches and seizures. The search and seizure referred to in the complaint was when Mr. Stewart was arrested by police officers. There is no indication

---

dismissed with prejudice for the reasons stated previously, should the Court find that the claimants are sufficiently aligned with Mr. Stewart that the substance of the claims should be addressed against them, SFPCU asserts that the arguments in this section regarding the federal claims and the following section regarding the state law claims are applicable to the remaining claimants, and their claims should be dismissed on those bases as well.

1  in the complaint that SFPCU was involved in this search.

2  Even if Mr. Stewart could demonstrate that it was the acts of the credit union or their agents or employees that led to the arrest, that action would not bring the credit union's actions under the realm of §1983. Contacting law enforcement on its own does not violate an individual's civil rights, and there is no indication that the credit union's employees functioned as a state actor who may be sued under §1983. *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989) ("[P]rivate parties are not state actors when they merely call on the law for assistance, even though they may not have grounds to do so…"); *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ("[M]erely complaining to the police does not convert a private party into a state actor.").

In addition, the Fifth Amendment's due process clause is applicable only to the federal government, not the state. *See, e.g., Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981) ("[F]ifth amendment protection attaches only when the federal government seeks to deny a liberty or property interest."). As SFPCU is not part of the federal government, Mr. Stewart's claim fails.

Further, the Sixth Amendment provides for the right to effective assistance of counsel in criminal cases. Mr. Stewart has not made any allegations that would in any way invoke a violation of this amendment by the credit union.

Finally, regarding the Fourteenth Amendment, Mr. Stewart's claims do not distinguish among the various counter/cross defendants, but generally state that his due process rights were violated. From what the credit union can glean from the counterclaim, the alleged due process violations relating to SFPCU seem to arise out of the claim that SFPCU made a report to the police and judiciary regarding "an alleged transaction" that led to Mr. Stewart's arrest. *See, e.g.,* CC ¶48b. Again, making a report to police would not invoke a due process claim. Such allegations are too far reaching and tenuous, and are not supported by any facts whatsoever.

///

///

///

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

### F. All But One of Mr. Stewart's State Law Claims Are Barred by the Litigation Privilege

The counterclaim states, without any detail, that the "acts and conduct alleged" in the counterclaim constitute "actionable torts" including "false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, negligence, and gross negligence." (CC ¶159). As it relates to the credit union, scattered throughout the counterclaim are conclusory allegations that SFPCU somehow acted inappropriately in contacting police and participating in litigation against Mr. Stewart. However, all such assertions are barred by the absolute litigation privilege provided by California Civil Code §47(b) and cannot form the basis of Mr. Stewart's state law claims. *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 364, 7 Cal. Rptr.3d 803, 812 (2004); *Silberg v. Anderson*, 50 Cal.3d 205, 212, 266 Cal. Rptr. 638, 641-42 (1990).

The litigation privilege has been broadly construed to bar all tort actions except for malicious prosecution. The privilege applies to all communication required or permitted in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers are involved. *Silberg, supra*, at 212, 215-16. In extending the privilege to a private party making a police report, the California Supreme Court stated that:

> By the same token, the overwhelming majority of cases conclude that when a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication also enjoys an unqualified privilege under section 47(b).

*Hagberg*, 32 Cal.4th at 364, 7 Cal. Rptr. 3d at 812.

In *Hagberg,* the plaintiff sued a bank for damages arising out of a report to police, which turned out later to be false, that the plaintiff attempted to cash a forged check with the bank. The bank moved for summary judgment, arguing that its statements to police regarding suspected criminal activity were subject to the absolute privilege established by §47(b). *Id.* at 364, 7 Cal. Rptr. At 807. The lower court granted the motion and explained that the privilege applied to the bank's statements to police. Citing *Silberg*, and several California Court of Appeal's decisions in its ruling, the lower court noted that "public policy would dictate that parties must have

[unfettered] access to make police reports." *Id.* at 358, 7 Cal. Rptr. at 807. The California Court of Appeal affirmed the order, and the Supreme Court agreed.

The Supreme Court stated the weight of authority supported the privilege and found the decisions persuasive. Based on the privilege, the bank's reporting of the plaintiff to the police – even though the report turned out to be false – was absolutely privileged.

Similarly, in the present case, the sole conduct attributable to the credit union is the vague allegation that the credit union reported to police that Mr. Stewart committed a crime. Such conduct falls squarely within the litigation privilege and, therefore, the state law claims for false arrest, assault and battery, abuse of process, negligence and gross negligence must fail.

G. **Mr. Stewart's Malicious Prosecution Claim Fails to State Sufficient Facts to Support a Cause of Action**

Lastly, to prevail on a claim for malicious prosecution, a plaintiff must prove that a prior action:

> (1) was commenced by or at the defendant's direction and terminated in the plaintiff's favor;
>
> (2) was brought without probable cause; and
>
> (3) was initiated with malice. *Sangster v. Paetkau* (1998) 68 Cal.App. 4th 151, 163, 80 Cal.Rptr 2d 66, 73-74

According to the California Court of Appeal:

> Malicious prosecution is a disfavored action because of the potentially chilling effect it may have on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court for the resolution of conflicts or the redress of a grievance. In our system, litigants have the right to present issues that are arguably correct even if it is extremely unlikely they will win. [Citations]
>
> As a result of this public policy, courts have placed strict limitations on the elements of the tort of malicious prosecution, requiring judicial determination of whether the underlying action lacked probable cause. [Citations] The plaintiff in a malicious prosecution action must prove each of the necessary elements of the tort, and the trial court must carefully consider the issue of probable cause so that recovery is not permitted for mere negligence in bringing an action [citation], or simply because the action was not successful." [Citations] *Id.* at 164, 80 Cal.Rptr.2d at 74.

To establish the first element of the tort, a plaintiff must demonstrate that a defendant offered false statements to law enforcement personnel or caused false testimony to have been presented to the grand jury. *Williams v. Hartford Ins. Co.* (1983) 147 Cal.App. 3d 893, 897-98, 195 Cal.Rptr. 448, 451. However, "... in most cases, a person who merely alerts law enforcement to a possible crime and a possible criminal is not liable if, law enforcement, on its own, after an independent investigation, decides to prosecute." *Id.* at 898, 195 Cal.Rptr. at 451.

Although the counterclaim does not set forth the elements of a malicious prosecution cause of action and how SFPCU may have committed the tort, Mr. Stewart's allegations against the credit union throughout the counterclaim are that the credit union and its employees contacted law enforcement about his account. Merely alerting police to a possible crime regarding what was believed to be a fraudulently obtained loan cannot form the basis of a malicious prosecution claim. Other than stating that the information allegedly provided by the credit union was false, Mr. Stewart has not stated any facts to support the first element of the tort. Likewise, Mr. Stewart cannot demonstrate that SFPCU lacked probable cause in making the alleged police report because he fails to state any facts to support this element of the claim.

Finally, Mr. Stewart's conclusory statements that the credit union and its employees acted "maliciously" are insufficient to support a claim that SFPCU acted with malice in reporting the suspected fraudulent loan. Mr. Stewart does not present any facts to support a claim that the credit union or any of its employees harbored any ill will or hostility towards him at any time. Accordingly, the malicious prosecution claim fails as well.

## IV.   CONCLUSION

Despite the length of the counterclaim and the number of parties allegedly involved, when stripped of its verbosity, the counterclaim contains little substance. The majority of the claimants do not make any allegations whatsoever against the credit union. Mr. Stewart, about whom the counterclaim is focused, fails to state any viable claims against the credit union, but instead simply reiterates the same conclusions over and over again.

Based on the foregoing points and authorities, SFPCU respectfully requests that their motion to dismiss be granted in its entirety as all the claims fail as a matter of law. Claimants'

violation of civil rights claims and tort claims are subject to dismissal based on incurable pleading deficiencies. Accordingly, this counterclaim should be dismissed with prejudice.

DATED: July 14, 2008                    LOMBARDI, LOPER & CONANT, LLP

                                        By:   /s/ Leora R. Ragones
                                              LEORA R. RAGONES
                                              Attorneys for Plaintiff
                                              SAN FRANCISCO POLICE
                                              CREDIT UNION