1   SCHEER LAW GROUP, LLP
    SPENCER P. SCHEER #107750
2   JOSHUA L. SCHEER #242722
    AUSTIN D. GARNER #184022
3   JONATHAN SEIGEL # 168224
    155 N. Redwood Drive, Suite 100
4   San Rafael, CA  94903
    Telephone:  (415) 491-8900
5   Facsimile:  (415) 491-8910
    S.135-215S
6

7   Attorneys for Plaintiff
    SAN FRANCISCO POLICE CREDIT UNION

8

9                  **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

                        **SAN JOSE DIVISION**

11  SAN FRANCISCO POLICE CREDIT          No. C08 02996 RS
    UNION,
12                                       **PLAINTIFF'S NOTICE OF**
                        Plaintiff,       **MOTION AND MOTION FOR**
13                                       **REMAND**
              vs.
14                                       <u>Hearing</u>:
    WILLIAM BULLOCK STEWART III,
    and DOES 1-50, inclusive             Date: August 27, 2008
15
                        Defendants.      Time: 9:30 a.m.
16
                                         Place: U.S. District Court
17
                                               280 South 1st Street
18
                                               Courtroom 4, 5th Floor
19
                                               San Jose, CA
20

21

22

23              **NOTICE OF MOTION AND RELIEF DESIRED**

24         TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD: PLEASE

25  TAKE NOTICE that on August 27, 2008, at 9:30 a.m. in Courtroom 4 of the United States

26  Court, Northern District of California, located at 280 South 1st Street, Courtroom 4, 5th Floor,

27

28
                                         1
    PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND

San Jose, California, Plaintiff SAN FRANCISCO POLICE CREDIT UNION  (" Plaintiff") will move this Court for an Order remanding this cause to Superior Court of the State of California, County of Santa Clara, the court from which it was improperly and improvidently removed and for attorney's fees in the amount of $4,334.00.

### GROUNDS FOR MOTION

Plaintiff is entitled to a remand of this action because, as is more fully explained in the Memorandum of Points and Authorities in Support of Motion for Remand and the Declaration of Jonathan Seigel, removal was improper because this court lacks subject matter jurisdiction over this matter.  In particular, removal was improper because the Second Amended Complaint does not present a claim or right arising under the Constitution, treaties or laws of the United States. This claim is grounded solely on the laws of the State of California.

### RECORD FOR MOTION

This Motion is based on this document, the Memorandum of Points and Authorities, the Declaration of Jonathan Seigel, the Certificate of Service, and on whatever argument and evidence the parties may offer at the hearing on this Motion.

Dated: July 16, 2008                          SCHEER LAW GROUP, LLP


                                              /s/ Jonathan Seigel
                                              168224

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND

1  SCHEER LAW GROUP, LLP
   SPENCER P. SCHEER #107750
2  JOSHUA L. SCHEER #242722
   AUSTIN D. GARNER #184022
3  JONATHAN SEIGEL # 168224
   155 N. Redwood Drive, Suite 100
4  San Rafael, CA  94903
   Telephone:  (415) 491-8900
5  Facsimile:  (415) 491-8910
   S.135-215S
6
7  Attorneys for Plaintiff
   SAN FRANCISCO POLICE CREDIT UNION
8
9              UNITED STATES DISTRICT COURT
10          NORTHERN DISTRICT OF CALIFORNIA
                 SAN JOSE DIVISION
11
   SAN FRANCISCO POLICE CREDIT          No. C08 02996 RS
12 UNION,
                                        **PLAINTIFF'S MEMORANDUM**
               Plaintiff,               **OF POINTS AND AUTHORITIES**
13                                      **IN SUPPORT OF MOTION FOR**
        vs.                             **REMAND**
14
   WILLIAM BULLOCK STEWART III,
15 and DOES 1-50, inclusive
                                        Hearing:
               Defendants.
16                                      Date: August 27, 2008
17                                      Time: 9:30 a.m.
18                                      Place: U.S. District Court
19                                             280 South 1st Street
20                                             Courtroom 4, 5th Floor
                                               San Jose, CA
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT............................1

    A.    BACKGROUND OF PARTIES AND ACTION.............................1

    B.    REMOVAL WAS IMPROPER..................................................3

II.   FACTS..........................................................................................4

III.  THIS ACTION SHOULD BE REMANDED BECAUSE IT WAS NOT
    TIMELY REMOVED...........................................................................7

IV.   AUTHORITY................................................................................7

    A.    This Action Should Be Remanded Because Defendant Has
        Not Attached The State Court File To The Notice Of Remand..............7

    B.    This Action Should Be Remanded Because There Is No
        Federal Question Jurisdiction.....................................................7

    C.    This Action Should Be Remanded Because There Is No
        Diversity Jurisdiction...............................................................8

    D.    Plaintiff Should Be Awarded Attorneys' Fees...............................8

V.    CONCLUSION................................................................................9

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Franchise Tax Board v. Construction Laborers Vacation Trust*
(1983) 463 U.S. 1, 10……………………………………………….8

*Munoz v. Small Business Admin.* (9th Cir., 1981) 644 F.2d 1361, 1365……..8

*United States ex rel. Walker v Gunn* (9th Cir., 1975) 511 F2d 1024………..7

**Rules**

28 U.S.C. Section 1446(b)……………………………………………7

28 U.S.C. Section 1447(c)……………………………………………8

1
2
3

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a collections and loan fraud action that was filed in state court and is based
solely on state law.  Less than one month before trial, and after a motion to compel had been
granted forcing the production of documents devastating to Defendant, but before the ordered
production date, Defendant removed this action to delay trial and avoid production of the
documents.

### A. BACKGROUND OF PARTIES AND ACTION

During January, 2007, Plaintiff SF POLICE CREDIT UNION, a credit union serving
members of the law enforcement, fire protection, and emergency medical communities,
loaned Defendant WILLIAM BULLOCK STEWART III, $25,000.  [Seigel Dec., ¶ 3].
Defendant made one partial payment and defaulted on the loan.  [Seigel Dec., ¶ 3].

In order to obtain the loan, Defendant represented that (1) he was employed by
Larkspur Consultants, Inc. and earned in excess of $152,000 in 2006 and (2) he was going to
use the funds to purchase stocks.  [Seigel Dec., ¶ 4].  After Defendant defaulted on the loan,
Plaintiff learned that his alleged employer did not exist and that he used the funds for his
business, "Stewart University of America", instead of stocks.  [Seigel Dec., ¶ 4].

Stewart University of America purports to be a medical school in which a college
degree is not required for matriculation.  [Seigel Dec., ¶ 5].  It also purports to teach courses
assisting medical school applicants with the Medical College Admission Test.  [Seigel Dec.,
¶ 5].  Recently, the Hawaii Department of Consumer Affairs filed sued Stewart University of
America for falsely claiming to the public that it is licensed as a post secondary degree
granting institution in Hawaii.  [Exh. 1 to Seigel Dec.].  According to the lawsuit, Stewart

1

University of America has never been accredited by a recognized accrediting agency or association. The State of Hawaii is seeking to enjoin Stewart University of America from operating in Hawaii or holding itself out as an educational institution. [Exh. 1 to Seigel Dec.].

Defendant's fraud in obtaining the loan is clear. There is no entity called Larkspur Consultants, Inc. [Seigel Dec., ¶ 6]. After this was brought to Defendant's attention, he claimed that someone mistakenly created a letterhead containing the name Larkspur Consultants, Inc. and that he really worked for an organization named "Larkspur." [Seigel Dec., ¶ 6]. Larkspur is a fictitious business name held by Defendant's girlfriend's son. [Seigel Dec., ¶ 6]. Larkspur has been thoroughly investigated and there is nothing indicating that it has been active in business, let alone sufficiently active to pay an employee $152,000. [Seigel Dec., ¶ 6]. The address listed on Larkspur Consultants, Inc.'s letterhead was a private mailbox rented by Stewart University of America. [Seigel Dec., ¶ 6]. Accordingly, the Larkspur Consultants, Inc. fraud and the Stewart University of America fraud is interrelated.

Plaintiff brought this action (the "Collections/Fraud Action") in state court for (1) breach of contract due to Defendant's failure to make payments on the loan, (2) money had and received, and (3) fraud by Defendant in inducing Plaintiff to make the loan by making false representations as to his employment and intended use of the loan proceeds. [Seigel Dec., ¶ 7]. No federal questions are raised in the operative Second Amended Complaint ("SAC"). [Seigel Dec., ¶ 7].

Months after the SAC had been filed, and after a court order had been issued requiring Defendant's alleged employer to produce documents which would have revealed the fraud, Defendant removed this case. [Seigel Dec., ¶ 9]. Removal was improper on both procedural and jurisdictional grounds.

2

1

## B.    REMOVAL WAS IMPROPER

2

First, removal was untimely.  This action was not removed within 30 days after the

3

filing and service of the SAC.  This requirement prevents parties from doing just what

4

Defendant is attempting in this action: Removing a case just before trial for purposes of

5

delay, to avoid application of an adverse court ruling, and the like.

6

7

Second, Defendant has not attached the state court file to the Notice of Removal.  The

8

operative pleadings, discovery orders, etc. have not been included.  In addition, Defendant

9

has attempted to deceive this court by attaching a document purporting to be the operative

10

answer, which had **not** been filed with the state court, nor was leave to file that answer been

11

given.  Defendant did so because it contains entirely irrelevant allegations and defenses

12

purporting to involve federal law.

13

14

Third, there is no federal question jurisdiction.  The SAC is based solely on state law

15

for failure to make loan payments and for fraud in obtaining the loan.  Although the

16

counterclaim filed by Defendant and five others (which was improperly filed without

17

permission) raises federal questions, as a matter of law, only the plaintiff's complaint may be

18

considered in determining whether there is removal jurisdiction.

19

Fourth, there is no diversity jurisdiction.  The SAC involves a California plaintiff

20

suing a California defendant.  The Counterclaim is not completely diverse.  Therefore, there

21

is no diversity jurisdiction.

22

23

Fifth, the court should not assert jurisdiction over the Collections/Fraud Action based

24

on a separate federal civil rights action recently filed by Defendant against Plaintiff and

25

dozens of other parties.  The two actions do not arise from a common nucleus of operative

26

facts and, even if they did, it would be inconvenient and unfair to Plaintiff to try the two

27

actions together.  Moreover, it would provide Defendant and others with a way of delaying

28

3

1   state court proceedings by filing a federal court action, removing the state court action filed

2   against that party, and seeking federal jurisdiction where it does not otherwise exist by

3   claiming the two actions involve related issues.

4           Consequently, there is no basis for federal jurisdiction over this matter.  Moreover,

5   federal jurisdiction should be declined if it exists.  Defendant removed this case less a month

6   before trial solely for purposes of delay.  Accordingly, this motion should be granted and the

7   case remanded to state court.

8   **II.     FACTS**

9           Plaintiff brought this action in state court (the "Collections/Fraud Action") for (1)

10  breach of contract due to Defendant's failure to make payments on the loan, (2) money had

11  and received, and (3) fraud by Defendant in inducing Plaintiff to make the loan by making

12  false representations as to his employment and intended use of the loan proceeds.  [Exh. 2 to

13  Seigel Dec.].  The SAC was filed on November 26, 2007.  [Exh. 2 to Seigel Dec.].  No

14  federal law has been asserted in the SAC.  [Exh. 2 to Seigel Dec.].  Defendant served an

15  answer to the SAC on Plaintiff on January 15, 2008.  [Exh. 3 to Seigel Dec.].

16          In discovery, Defendant refused to provide evidence of his employment, causing

17  Plaintiff to move to compel.  [Seigel Dec., ¶ 8].  The motion was granted and Defendant was

18  sanctioned $1,235.00. [Seigel Dec., ¶ 8].  When he finally produced documents regarding his

19  alleged employment, he produced only two documents, although he claims to have worked

20  for this employer since 2000.  [Seigel Dec., ¶ 8].

21          Plaintiff also subpoenaed Defendant's employment file documents directly from the

22  alleged employer. [Seigel Dec., ¶ 9].  The employer failed to comply with the subpoena.

23  Plaintiff then moved to compel.  Rather then submitting Defendant's employment file before

24  the hearing, the alleged employer instead submitted copies Defendant's responses to

4

interrogatories and requests for production of documents with certification signed by Defendant himself and not by anyone from his employer. [Seigel Dec., ¶ 9]. **Only days after the motion to compel was granted** and sanctions imposed against the alleged employer of $871.00, Defendant removed the state court action. [Seigel Dec., ¶¶ 9 & 11].

On April 15, 2008, trial was set for July 14, 2008. [Seigel Dec., ¶ 10]. On April 24, 2008, Defendant and two other plaintiffs filed an action in this court against Plaintiff and 34 other defendants, including a state court judge, Santa Clara County, the Mayor of San Jose, all members of the San Jose City Council the San Jose Police Department, San Mateo County, the San Mateo Police Department, the City of San Mateo, all members of San Mateo City Council, various police departments, various police officers, etc. (Case No. C08 02143 RS) (the "Civil Rights Action"). [Seigel Dec., ¶ 10]. Although the complaint is hard to decipher, most of the allegations pertain to alleged civil rights violations in connection with alleged false arrest by police officers, battery by police officers, stalking, etc. [Seigel Dec., ¶ 10]. Plaintiff, its employees who were named as defendants in the Civil Rights Action, and Plaintiff's counsel, who were also named as defendants, were never served. [Seigel Dec., ¶ 10]. On June 26, 2008, the Civil Rights Action was dismissed with prejudice.

In order to delay trial less than one month away, relieve his alleged employer from having to produce his employment file as ordered by the state court, and attempt to interject irrelevant matters into this action, on June 17, 2008, less than one month before trial and almost seven months after the SAC was filed, Defendant removed this case to federal court. [Seigel Dec., ¶ 11].[1]

---

[1] Defendant's, Notice of Removal was filed under the case number of the Civil Rights Action. However, the removed action was assigned its own case number.

5

Defendant falsely stated in his Notice of Removal that he had attached the entire state court file.[2] [Seigel Dec., ¶ 12]. Much of the file was missing, including the SAC, Defendant's answer thereto, the discovery orders, the trial setting order, and other documents. [Seigel Dec., ¶ 12]. Moreover, he fraudulently attached a document entitled "First Amended Answer to Unverified Second Amended Complaint", which contains pages of irrelevant allegations and exhibits, as if that were the operative answer in the state court action. [Seigel Dec., ¶ 12]. **That document was never filed with the state court, nor did Defendant receive leave to file it.** [Seigel Dec., ¶ 12]. Plaintiff will move to strike the First Amended Answer if this case is not remanded.[3]

Defendant also falsely stated in his notice of removal that "[T]he case is still in the pretrial stage and defendant William Bullock Stewart III, is in the discovery phase of the case." [4] As noted above, trial was scheduled for July 14, 2008 and Defendant removed the case less than one month before trial. In addition, the discovery phase of the case had already ended. [Seigel Dec., ¶ 12].

On June 23, 2008, Defendant and 13 others filed a document entitled "Counter Claim Cross Complaint" in this action (the "Counterclaim"). [Seigel Dec., ¶ 15]. Plaintiff and 47 others, including three state court judges, are named as counter defendants. The allegations are similar to those made in the Civil Rights Action. [Seigel Dec., ¶ 15].

//

//

---

[2] Notice of Removal, para. 2.

[3] This document was also filed using the case number of the Civil Rights Action.

[4] Notice of Removal, para. 2.

6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR REMAND

1    **III.    THIS ACTION SHOULD BE REMANDED BECAUSE IT WAS NOT TIMELY REMOVED**

2

3        Notice of removal must be filed within 30 days after the receipt by the defendants of

4    the initial pleading or an amended pleading.  28 U.S.C. Section 1446(b).  This time limitation

5    is strictly construed.  *United States ex rel. Walker v Gunn* (9th Cir., 1975) 511 F2d 1024.

6    Here, the initial complaint was filed in July 2007.  It did not raise any federal question.  The

7    SAC, which is the operative complaint, was filed in November 2007 and does not raise any

8    federal question.  Defendant did not remove this case until June 2008.  Accordingly, notice of

9    removal was not timely filed, requiring remand of this action.

10

11   **IV.    AUTHORITY**

12       **A.    This Action Should Be Remanded Because Defendant Has Not Attached
               The State Court File To The Notice Of Remand**

13

14       Copies of all pleadings, process, and orders served on the removing defendant in the

15   state action must be filed with the notice of removal.  28 U.S.C. Section 1446(b).  Defendant

16   has not attached the SAC, his Answer to the SAC, various discovery orders, the trial setting

17   order, etc., to the Notice of Removal.  Accordingly, he has not met statutory requirements for

18   removal.  Making matters worse, he has attempted to affirmatively mislead this court by

19   attaching a document purporting to be the "First Amended Answerer to Unverified Sacking

20   Amended Compliant."  No such document has been filed with the state court, nor has leave

21   to file that document been given.

22

23       **B.    This Action Should Be Remanded Because There Is No Federal Question
               Jurisdiction**

24

25       The SAC is based solely on state law.  Neither Defendant's Answer (either the one he

26   actually filed with the state court or the document that is misrepresented as the First Amended

27   Answer), nor the Counterclaim may be considered in determining whether a federal question has

28                                                    7

1   been raised.  Only the SAC may be considered.  *Franchise Tax Board v. Construction Laborers*

2   *Vacation Trust* (1983) 463 U.S. 1, 10.  Furthermore, the Counterclaim is not proper and may not

3   be considered because no leave to file it has been granted.  Accordingly, there is no federal

4   question jurisdiction.

> **C.    This Action Should Be Remanded Because There Is No Diversity Jurisdiction**

7   In his Notice of Remand, Defendant alleges that he would be filing a counterclaim

8   containing "newly added cross-complainants, who are both flesh and blood persons and

9   corporate persons who are not California residents…." [Notice of Remand, para. 3].  Thereafter,

10  filed the Counterclaim.  Although the Counterclaim is improper and may not be considered

11  because no leave to file has been granted, it would not provide diversity jurisdiction even if it

12  could be considered.  The Counterclaim contains numerous Counterclaim Plaintiffs and

13  Counterclaim Defendants who are California citizens.  [Counterclaim, paras. 12a, 12b., 12c.,

14  12f., 12k., and 14-46].  There is no diversity jurisdiction unless there is **complete** diversity.

15  *Munoz v. Small Business Admin.* (9th Cir., 1981) 644 F.2d 1361, 1365.  Because there are

16  California citizens among the Counterclaim Plaintiffs and the Counterclaim Defendants, there is

17  no complete diversity.

> **D.    Plaintiff Should Be Awarded Attorneys' Fees**

19  "An order at remaining the case may require payment of just costs and any actual

20  expenses, including attorney fees, incurred as a result of removal."  28 U.S.C. Section 1447(c).

21  Such an order is justified here.  Defendant removed this action in bad faith less than one month

22  before trial and once after the SAC was filed.  Defendant falsely stated on the Notice of Removal

23  that the state court file was attached when, in fact, only selective documents were attached.  He

24  even affirmatively misrepresented that the attached "First Amended Answer" had been filed in

25  state court.

26  Plaintiff is a nonprofit credit union.  Plaintiff's fees and costs relating to removal total

27  $4,334.00. [Seigel Dec., ¶ 16].

28

8

1    Defendant, if faced with having to pay Plaintiff's fees and costs, will likely attempt to

2    seek the court's sympathy by claiming that he is a *pro se* litigant and does not have a full

3    understanding of the complexities of removal. Defendant repeatedly used such excuses in the

4    state court. Eventually, the state court found these claims to be unpersuasive and ordered

5    Defendant to pay sanctions to Plaintiff for failure to provide good faith response to discovery.

6    Accordingly, this court should not be swayed by such pleas on Defendant's part.

7    **V.    CONCLUSION**

8    Defendant removed this case less than a month before trial and after a discovery order

9    had been issued against his own alleged employer which would have revealed his fraud in

10   obtaining the loan. As a matter of law, removal was untimely. In addition, he failed to attach the

11   state court file to his Notice of Removal and affirmatively attempted to deceive this court by

12   attaching an amended answer that was never filed.

13   Even if Defendant could avoid these procedural defects, there is no federal question or

14   diversity providing federal jurisdiction. The SAC raises no federal question and the parties are

15   both California citizens. Defendant's Answer and Counterclaim may not be considered. Nor

16   should Defendant be allowed to create jurisdiction through the Civil Rights Action.

17   For the foregoing reasons, this motion should be granted any case remanded to state

18   court.

19                                SCHEER LAW GROUP, LLP

20   DATED:  July 16, 2008

21                                /s/ Jonathan Seigel
                                  168224
22

23

24

25

26

27

28                                9

1   SCHEER LAW GROUP, LLP
    SPENCER P. SCHEER #107750
2   JOSHUA L. SCHEER #242722
    AUSTIN D. GARNER #184022
3   JONATHAN SEIGEL # 168224
    155 N. Redwood Drive, Suite 100
4   San Rafael, CA  94903
    Telephone:  (415) 491-8900
5   Facsimile:  (415) 491-8910
    S.135-215S
6

7   Attorneys for Plaintiff
    SAN FRANCISCO POLICE CREDIT UNION

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

                       SAN JOSE DIVISION

11  SAN FRANCISCO POLICE CREDIT          No. C08 02996 RS
    UNION,
12                                       **DECLARATION OF JONATHAN
                   Plaintiff,            SEIGEL IN SUPPORT OF
13                                       MOTION FOR REMAND**
              vs.
14                                       Hearing:
    WILLIAM BULLOCK STEWART III,
    and DOES 1-50, inclusive             Date: August 27, 2008
15
                   Defendants.           Time: 9:30 a.m.
16
                                         Place: U.S. District Court
17
                                              280 South 1st Street
18
                                              Courtroom 4, 5th Floor
19
                                              San Jose, CA
20

21

22          I, Jonathan Seigel, declare:

23          1.      I have personal knowledge of the facts stated herein, am competent to testify

24   in thereto, and would so testify if called as a witness.

25          2.      I am an attorney for Plaintiff SF POLICE CREDIT UNION.

26          3.      During January, 2007, Plaintiff SF POLICE CREDIT UNION, a credit union

27   serving members of the law enforcement, fire protection, and emergency medical

28   communities, loaned Defendant WILLIAM BULLOCK STEWART III, $25,000.  Defendant

                                          1
     DECLARATION OF JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND

made one partial payment and defaulted on the loan.

4.    In order to obtain the loan, Defendant represented that (1) he was employed by Larkspur Consultants, Inc. and earned in excess of $152,000 in 2006 and (2) he was going to use the funds to purchase stocks.  After Defendant defaulted on the loan, Plaintiff learned that his alleged employer did not exist and that he used the funds for his business, "Stewart University of America", instead of stocks.

5.    Stewart University of America purports to be a medical school in which a college degree is not required for matriculation.  It also purports to teach courses assisting medical school applicants with the Medical College Admission Test.  Recently, the Hawaii Department of Consumer Affairs filed sued Stewart University of America for falsely claiming to the public that it is licensed as a post secondary degree granting institution in Hawaii.  According to the lawsuit, Stewart University of America has never been accredited by a recognized accrediting agency or association.  The State of Hawaii is seeking to enjoin Stewart University of America from operating in Hawaii or holding itself out as an educational institution.  A true and correct copy of the complaint filed by the Hawaii Department of Consumer Affairs is attached hereto as Exhibit 1.

6.    Defendant's fraud in obtaining the loan is clear.  There is no entity called Larkspur Consultants, Inc.  After this was brought to Defendant's attention, he claimed that someone mistakenly created a letterhead containing the name Larkspur Consultants, Inc. and that he really worked for an organization named "Larkspur."  Larkspur is a fictitious business name held by Defendant's girlfriend's son. Larkspur has been thoroughly investigated and there is nothing indicating that it has been active in business, let alone sufficiently active to pay an employee $152,000.  The address listed on Larkspur Consultants, Inc.'s letterhead was a private mailbox rented by Stewart University of America.

DECLARATION OF JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND

7.      Plaintiff brought this action (the "Collections/Fraud Action") in state court for (1) breach of contract due to Defendant's failure to make payments on the loan, (2) money had and received, and (3) fraud by Defendant in inducing Plaintiff to make the loan by making false representations as to his employment and intended use of the loan proceeds.  On November 26, 2007, Plaintiff filed and served the operative Second Amended Complaint ("SAC"), a true and correct copy of which is attached hereto as Exhibit 2.  A true and correct copy of Defendant's Answer to the SAC is attached hereto as Exhibit 3.

8.      In discovery, I served a request for production of documents of all documents evidencing Defendant's employment by Larkspur or Larkspur Consultants, Inc.  Defendant objected and did not provide any documents.  Accordingly, I moved to compel.  On April 25, 2008, Defendant was ordered by the Superior Court to produce documents regarding, among other things, his alleged employment.  He was also sanctioned the amount of $1,235.00 for abuse of the discovery process.  When he finally produced documents regarding his alleged employment, he produced only two documents, although he claims to have worked for this employer since 2000.

9.      In addition to requesting employment information from directly from Defendant, I subpoenaed Defendant's employment file from his purported employer, Larkspur or Larkspur Consultants, Inc.  The copy service handling the subpoena, Quest Discovery Services, received no documents by the production deadline.  In addition, Larkspur did not respond to Quest's letters advising that the documents were overdue.  Accordingly, I moved to compel production of those documents.  On June 13, 2008, the Superior Court granted the motion to compel and toward sanctions in the amount of $871.00.  Larkspur did produce documents, but rather than producing Defendant's employment file, the alleged employer instead submitted copies Defendant's responses to interrogatories and

DECLARATION OF JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND

requests for production of documents with certification signed by Defendant himself and not by anyone from his employer**.**

10.    On April 15, 2008, trial of the Collections/Fraud Action was set for July 14, 2008.  On  April 24, 2008, Defendant and two other plaintiffs filed an action in this court against Plaintiff and 34 other defendants, including a state court judge, Santa Clara County, the Mayor of San Jose, all members of the San Jose City Council the San Jose Police Department, San Mateo County, the San Mateo Police Department, the City of San Mateo, all members of San Mateo City Council, various police departments, various police officers, etc. (Case No. C08 02143 RS) (the "Civil Rights Action").  Although the complaint is hard to decipher, most of the allegations pertain to alleged civil rights violations in connection with alleged false arrest by police officers, battery by police officers, stalking, etc. Plaintiff, its employees who were named as defendants in the Civil Rights Action, and Plaintiff's counsel, who were also named as defendants, were never served.  On June 25, 2008, the Civil Rights Action was dismissed with prejudice.

11.    On June 17, 2008, shortly before Larkspur was ordered to produce Defendant's employment file, and less than one month before the July 14, 2008 trial date, Defendant removed this case to federal court.

12.    Defendant falsely stated in his Notice of Removal that he had attached the entire state court file.  Much of the file was missing, including the SAC, Defendant's answer thereto, the discovery orders, the trial setting order, and other documents.  Moreover, he fraudulently attached a document entitled "First Amended Answer to Unverified Second Amended Complaint", which contains pages of irrelevant allegations and exhibits, as if that were the operative answer in the state court action.  That document was never filed with the state court, nor did Defendant receive leave to file it.

4

DECLARATION OF JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND

13.     Defendant also falsely stated in his notice of removal that "[T]he case is still in the pretrial stage and defendant William Bullock Stewart III, is in the discovery phase of the case."  However, discovery had already been cut off by operation of law before this case was removed less than one month before trial.

14.     The Collections/Fraud Action and the Civil Rights Action do not arise from a common nucleus of operative facts.  The issues in the Collections/Fraud Action are whether Defendant fraudulently obtained a loan and whether he defaulted on it.  The only plaintiff is the lender and the only defendant is the borrower.  In contrast, the Civil Rights Action involves 3 plaintiffs and 35 defendants.  Only two of those defendants have any connection with Plaintiff and the remaining 32 defendants are public officials and public employees.  The primary thrust of the Civil Rights Action is harassment and misconduct by police officers, judges, and elected public officials in connection with Defendant's arrest and imprisonment.   The allegations against Plaintiff and its employees involved making an alleged false police report and defaming Defendant and others in court papers filed in the Collections/Fraud Action.

15.     On June 23, 2008, Defendant and 13 others filed a document entitled "Counter Claim Cross Complaint" in this action.  Plaintiff and 47 others, including three state court judges, are named as counter defendants. The allegations are similar to those made in the Civil Rights Action.

16.      Because Plaintiff is a credit union serving law enforcement, fire and emergency management personnel, my hourly billing rate in this case is $220.00.  My total time on this motion is as follows: 14.7 hours drafting Plaintiff's moving papers, an anticipated 3.0 hours reviewing Defendants' opposition papers and drafting Plaintiff's reply papers, and an anticipated 2.0 hours for attending the hearing, including travel.  Accordingly, total hours are an estimated 19.7 at $220.00 per hour, or $4,334.00.

//

//

DECLARATION OF JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND

1        I declare under the penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.

3                                   SCHEER LAW GROUP, LLP

4  DATED:  July 16, 2008

5                                   /s/ Jonathan Seigel

6                                   168224

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND

1  SCHEER LAW GROUP, LLP
   SPENCER P. SCHEER #107750
2  JOSHUA L. SCHEER #242722
   AUSTIN D. GARNER #184022
3  REILLY WILKINSON #250086
   155 N. Redwood Drive, Suite 100
4  San Rafael, CA  94903
   Telephone:  (415) 491-8900
5  Facsimile:  (415) 491-8910
   S.135-215S
6  Attorneys for Plaintiff
7  SAN FRANCISCO POLICE CREDIT UNION

(ENDORSED)

2007 NOV 26  PM 1: 08

CHIEF ~~~ ~~~ ~~~ CLERK
SUP~~~ ~~~ ~~~ OF CA
COUN~~~ ~~~ ~~~ CLARA
BY ~~~ ~~~ ~~~ UTY
A. FLORESCA

8              **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **IN AND FOR THE COUNTY OF SANTA CLARA**

| | |
|---|---|
| 10  SAN FRANCISCO POLICE CREDIT UNION, | No. 1-07-CV-089409 |
| 11                    Plaintiff, | Unlimited Civil |
| 12        vs. | **SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND FRAUD, COMMON COUNTS** |
| 13  WILLIAM BULLOCK STEWART III, and DOES 1-50, inclusive | |
| 14                    Defendants. | AMOUNT IN CONTROVERY EXCEEDS $25,000 |
| 15 | |

16

17         COMES NOW plaintiff, SAN FRANCISCO POLICE CREDIT UNION and alleges

18  as follows:

19                    **GENERAL ALLEGATIONS**

20         1.    SAN FRANCISCO POLICE CREDIT UNION ("PLAINTIFF,") is a duly

21  organized California credit union which maintains its principal place of business in San

22  Francisco County, California.

23         2.    Plaintiff is informed and believes, and on that basis alleges that at all times

24  herein relevant, defendant WILLIAM BULLOCK STEWART, III ("Stewart") is now, and at

25  all times mentioned herein was, an individual with his principal residence in the County of

26  Santa Clara, State of California.

27         3.    The true names and capacities, whether individual, corporate, associate or

28  otherwise of defendants Does 1-50, inclusive, are unknown to Plaintiff, and, therefore,

**EXHIBIT " ⅃ "**

1    Plaintiff sues said defendants by such fictitious names, and Plaintiff will amend this
2    complaint to show their true names and/or capacities when the same have been ascertained.
3    Plaintiff is further informed and believes, and on that basis alleges, that each of the
4    fictitiously named defendants is in some manner responsible for the events and happenings
5    herein referred to and proximately caused the damage suffered by Plaintiff.  For ease of
6    reference, whenever a named defendant is referred to herein, such reference shall be deemed
7    to include Does 1-50.

8        4.    On or about October 8, 2005, Stewart applied for membership in the San
9    Francisco Police Credit Union.  Stewart signed a Master Membership and Account
10   Application ("Application").  A copy of the Application is attached hereto as Exhibit "A".

11       5.    On January 8, 2007, Stewart requested and Plaintiff gave him an Open End
12   Plan, including an Addendum thereto ("Plan").  The Plan, including Addendum, is attached
13   hereto as Exhibit "B" and incorporated by reference.  The Addendum provides that "you
14   agree to pay all costs of collecting the amount you owe under this Agreement, including
15   court costs and reasonable attorney fees".

16       6.    On January 23, 2007, Stewart requested a loan in the amount of $25,000.00,
17   from Plaintiff.

18       7.    Accordingly, Stewart submitted a loan request ("Loan Request") to Plaintiff.
19   The Loan Request is attached as Exhibit "C" and incorporated by reference.  As a part of the
20   loan application process and in order to induce Plaintiff to loan money to Stewart, Stewart
21   provided evidence of employment from his putative employer, Larkspur Consultants, Inc.
22   ("LCI").  Stewart submitted a letter, ostensibly from LCI, verifying Stewart's employment
23   with LCI and stating that Stewart earned $152,011.80 in 2006.  The letter is attached as
24   Exhibit "D" and incorporated by reference.

25       7.    Plaintiff is informed and believes that LCI does not exist and the business
26   address given by LCI is a Post Office Box.

27       8.    Based on the Loan Request and the representations by Stewart that he was
28   employed by LCI and earned a yearly income of $152,011.80, Plaintiff made a loan to

2

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT

1  Stewart in the amount of $25,000.00 as evidenced by the Open End Disbursement Receipt

2  ("Loan Receipt"). The Loan Receipt is attached hereto as Exhibit "E" and incorporated by

3  reference. On the Loan Receipt, the date of "1/23/2007" is printed and is the correct date of

4  the loan, but Defendant incorrectly wrote the date "1/23/06" under his signature. The Plan,

5  the Loan Request, and the Loan Receipt are collectively referred to as the "Loan

6  Agreement".

7      9.    On or about March 15, 2007 ("Default Date"), Stewart breached the Loan

8  Agreement by failing to make the required payment from March 15, 2007. Stewart continues

9  to breach the Loan Agreement by failing to make any of the required payments from March

10 15, 2007, to the present.

11     Stewart's loan is in default and is now due for the following:

12     Principal                                    $24,635.86

13     Interest from March 15, 2007 to June 20, 2007

14        @ $8.61 per day                           $835.17

15     Principal plus interest as of June 20, 2007   $25,471.03

16     Interest has continued to accumulate from the Default date at the contract rate of

17 12.75% annual interest. Interest continues to accrue on the balance at the per diem rate of

18 $8.61.

19     10.    Plaintiff has made demands for payment on the Loan Agreement and Stewart

20 has not responded.

21                      **FIRST CAUSE OF ACTION**
                            **(Breach of Contract)**

22     11.    Plaintiff repeats and incorporates herein by reference as if fully set forth

23 paragraphs 1 through 9 hereof.

24     12.    On or about January 23, 2007, Plaintiff and Stewart entered into the Loan

25 Agreement in which Plaintiff was to loan Stewart $25,000.00 and Stewart was to make

26 monthly payments in the amount of $565.00 to Plaintiff.

27     13.    Plaintiff has performed all conditions, covenants and promises required of it

28 and has made the requisite demand of Stewart for Payment on the Loan Agreement.

14. Stewart breached the Loan Agreement by failing to make monthly payments for the months of March through June as required under the Loan Agreement.

15. As a result of Stewart's breach, Plaintiff has suffered damages in the amount of $25,471.03, as of June 20, 2007, plus interest, attorney's fees and costs. Plaintiff may incur additional expenses in an amount unknown to plaintiff at this time. Plaintiff prays leave of this Court to amend this complaint to insert the true amount of the damages, interest, attorney's fees and costs, when they are ascertained.

### SECOND CAUSE OF ACTION
#### (Against Defendant for Money Had and Received)

16. Plaintiff repeats and incorporates herein by reference as if fully set forth paragraphs 1 through 15 hereof.

17. Within four (4) years last past, Defendant became indebted to Lender for money had and received and for their benefit within the County of Santa Clara, State of California in the sum of $25,000.00.

18. After all appropriate credits and charges, there is now due and owing and unpaid the sum of $25,471.03 together with interest thereon at the rate of 12.75% or $8.61 per diem as of June 20, 2007 through the date of trial, no part of which has been paid although demand has been made therefor.

19. By virtue thereof, Plaintiff has been damaged in the aforesaid sum.

### THIRD CAUSE OF ACTION
#### (Fraud)

20. Plaintiff repeats and incorporates herein by reference as if fully set forth paragraphs 1 through 19 hereof.

21. In order to obtain the loan from the Plaintiff in the amount of $25,000.00, Stewart represented that he worked for LCI and earned $152,011.80 per year.

22. When the Stewart made these representations, he knew them to be false and made these representations with the intention to induce the Plaintiff to act in reliance on these representations and to induce Plaintiff to loan money to him.

4

23.    Plaintiff, at the time that these representations were made by Stewart, was ignorant of the falsity of Stewart's representations and believed them to be true. In reliance on these representations made in the Application and the employment letter provided by LCI on behalf of Stewart, Plaintiff loaned $25,000.00 to Stewart. Had the Plaintiff known the actual facts, it would not have taken such action.

24.    Plaintiff is informed and believes that the representations made by Stewart were false. Lender is informed and believes that Stewart did not work for LCI and that LCI did not exist when Stewart submitted the Application. Furthermore, Stewart did not earn $152,011.80 per year, as stated in the Loan Request by Stewart when he submitted the Loan Request to Plaintiff.

25.    Plaintiff has suffered damages as a result of the conduct of Stewart.

26.    The actions of the Defendant Stewart were intentionally fraudulent, and constituted despicable conduct, in that Stewart knew that he had no right to receive loan proceeds due to the fact that he misrepresented his employment and income to Plaintiff in order to obtain the loan, and that Stewart would not have obtained these funds had he told the truth. As such, Plaintiff is entitled to punitive and exemplary damages within the meaning of Civil Code Section 3294, in an amount within the jurisdiction of this Court to be set forth in a statement to be served according to Code of Civil Procedure Section 425.115.

///

///

///

///

///

///

///

SECOND AMENDED COMPLAINT FOR BREACH OF

1    WHEREFORE, Plaintiff prays for judgment against defendants as follows:

2    **ON ALL CAUSES OF ACTION:**

3    1.    Damages according to proof at time of trial.

4    2.    Costs of suit incurred.

5    3.    Pre-judgment interest.

6    4.    Attorneys' fees;

7    5.    For all such other relief as the Court deems just and proper; and

8    6.    Punitive Damages.

9                                        SCHEER LAW GROUP, LLP

10   DATED: November 21, 2007

11                                        SPENCER P. SCHEER
                                         Attorneys for Plaintiff
12                                        SAN FRANCISCO POLICE CREDIT UNION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

SECOND AMENDED COMPLAINT FOR BREACH OF ...

**SF POLICE CREDIT UNION MASTER MEMBERSHIP & ACCOUNT APPLICATION**
Member Services:(800) 222-1391  Website:www.sfpcu.org

Member Name: STEWART III    WILLIAM    BULLOCK
Last Name    First Name    Middle Initial

Member Number: 1363718    No Record #352

**SF Police CREDIT UNION**

**CHOOSE ONE:**

☒ **Membership Account Package**
[Share Account (Savings), Share Draft Account (Checking), MasterMoney Debit Card, Free Share Overdraft Protection]

**Debit /ATM Card**
☒ Logo    ☐ No Logo

☐ Member    ☐ Joint 1    ☐ Joint 2

☐ Share Account (Savings)

**Additional Services**
☐ Share Draft Account (Checking)
☐ Share Certificate
☐ boom! (ages 13 -18)
☐ Looney Tunes (under 13)
☐ Christmas Club

I am joining the SF Police Credit Union through my family relationship or affiliation with:
Calif Army National Guard

Share Draft overdrafts will be covered by a transfer from:
☐ Regular Share
☐ Other Share Account
☐ Overdraft Loan (Call the Credit Union to apply)

Acct#: _____ Type: _____

Signature: _____

**FOR CREDIT UNION USE ONLY:**
TIS documents mailed: Yes  Staff Name: Grant
Application approved by: BD  #352

**Important Information About Procedures for Opening a New Account:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will enable us to identify you. We may also ask to see your driver's license or other valid identifying information.

**ACKNOWLEDGEMENT OF TRUTH-IN-SAVINGS DISCLOSURE (TIS)**

By signing below, I/we agree to the terms and conditions of the TIS/Rate/Fee Schedule and to any amendments thereto which are by this reference incorporated in their entirety into the disclosure. I/We agree to be bound by the terms and conditions of the disclosures and application. I/We understand the Credit Union will mail the TIS, Fee and Rate Schedule within 10 business days from the date that the account is opened. I/We certify that everything I/we have stated in this application and on any attachments is correct and understand that the Credit Union may verify all information. **I/We authorize you to gather any credit, checking account and employment information deemed appropriate.**

X _W.B. Stewart III_    X _____    X _____
MEMBER SIGNATURE    JOINT 1 OWNER SIGNATURE    DATE    JOINT 2 OWNER SIGNATURE    DATE

| | | | | | |
|---|---|---|---|---|---|
| **M E M B E R** | STEWART III  William Bullock  11-11-55 / 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 | | | | |

Last Name    First Name    Middle Initial    Date of Birth    Social Security Number    Verification Password*

1461 Forrestal Ave.    San Jose    CA    95110
Residential Address    City    State    Zip

Mailing Address (if different from above)    City    CAA    State    Zip
Calif National Guard    (408) 702-7677    B4061094    yesbillstewart@netscape.net
Employer    Day Phone Number    Evening Phone Number    Drivers License/State I.D. Card    Email Address

**J O I N T 1**

Last Name    First Name    Middle Initial    Date of Birth    Social Security Number    Verification Password*

Residential Address    City    State    Zip

Mailing Address (if different from above)    City    State    Zip

Relationship to Member    Day Phone Number    Evening Phone Number    Drivers License/State I.D. Card    Email Address

**J O I N T 2**

Last Name    First Name    Middle Initial    Date of Birth    Social Security Number    Verification Password*

Residential Address    City    State    Zip

Mailing Address (if different from above)    City    State    Zip

Relationship to Member    Day Phone Number    Evening Phone Number    Drivers License/State I.D. Card    Email Address

**B E N E F I C I A R Y**

**Designation of Beneficiary (please print)** In the event of my death and all other joint owners predecease me; I hereby designate the person(s) whose name(s) appears below as my beneficiary to receive any and all amounts in my account(s).

Stewart, Lance Arthur    11-17-87
Last Name    First Name, Middle Initial    Social Security Number    Date of Birth    Last Name    First Name, Middle Initial    Social Security Number    Date of Birth

Last Name    First Name, Middle Initial    Social Security Number    Date of Birth    Last Name    First Name, Middle Initial    Social Security Number    Date of Birth

**Taxpayer Identification Number and Backup Withholding**

**CERTIFICATION:** By signing below, I certify under penalties of perjury that (1) the Social Security Number or Employer Identification Number above is my correct Taxpayer Identification number, and (2) I am NOT, unless noted below, subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien).

☐ I am subject to backup withholding
(Cross out item 2)

☐ I am not a U.S. citizen or resident
(Complete an IRS W-8 form and cross-out item 3 above)

Member Signature X _W.B. Stewart III_    Date 8 Oct 2005
*Please choose a password for verification purposes. It can be letters or numbers.

**EXHIBIT " A "**

12/04



2550 IRVING STREET
P.O. BOX 22219
SAN FRANCISCO, CA 94122-021



**Open-End Plan**
**Signatures** *PLUS*

| PLEASE NOTE: | - Sign on signature line<br>- Return completed form to credit union<br>- An incomplete or unsigned form may delay processing |
| --- | --- |

| BORROWER 1 NAME | STEWART III, WILLIAM BULLOCK | ACCOUNT NUMBER | 1363718 |
| --- | --- | --- | --- |
| BORROWER 2 NAME | , | ACCOUNT NUMBER | |

## CREDIT AND SECURITY AGREEMENT

This LOANLINER Credit and Security Agreement, which includes the Truth in Lending Disclosures, will be referred to as "the Plan." The Plan documents include this agreement and an Addendum. "You", "your" and "borrower" mean any person who signs the Plan. "Credit union", "we", "our" and "us" mean the Credit Union whose name appears on the Plan or anyone to whom the Credit Union transfers its rights under the Plan. This is a multi-state document which may be used to lend to borrowers in all states except Louisiana.

**1.   HOW THIS PLAN WORKS --** This is an open-end, multi-featured credit plan. We anticipate that, from time to time, you will borrow money (called "advances") under the Plan. We are not required to make advances to you under the Plan and can refuse a request for an advance at any time. The Addendum describes the different types of credit ("subaccounts") available under the Plan, the current interest rate for each subaccount expressed as a daily periodic rate and corresponding annual percentage rate and other charges. It may also have other terms and a schedule for determining the payment amounts.

**2.   CREDIT LIMIT --** We may, but do not have to, establish a credit limit on certain subaccounts. If a credit limit is set for a subaccount, you promise not to exceed the established credit limit. If you exceed the credit limit, you promise to repay immediately the amount which exceeds the credit limit.

**3.   REPAYMENT --** You promise to repay all amounts you owe under the Plan plus interest. Payments are due on the last day of the month unless we set a different day at the time of an advance. If the Addendum has no payment schedule for a subaccount, your payment will be determined at the time of each advance. Payments must include any amount past due and any amount by which you have exceeded any credit limit you have been given for a subaccount. You may repay all or part of what you owe at any time without any prepayment penalty. Even if you prepay, you will still be required to make the regularly scheduled payments unless we agree in writing to a change in the payment schedule. If you have a joint sharedraft account, you will be responsible for paying all overdraft advances obtained by a joint holder of the sharedraft account. Unless otherwise required by law, payments will be applied to amounts owed under the Plan, in the manner the Credit Union chooses.

**4.   PLAN ACCESS --** You can obtain credit advances in any manner authorized by us. If we allow you to use your ATM/Debit card to access the Plan, you may be liable for the unauthorized use of your ATM/Debit card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. If you believe your ATM/Debit card has been lost or stolen, immediately inform the Credit Union by calling or writing us at the telephone number or address that appears elsewhere in the Plan. If the card is used to obtain unauthorized advances directly from the Plan, your liability will not exceed $50.00. If the unauthorized withdrawal is from a sharedraft account, your liability is governed by the Regulation E disclosures you received at the time you received your ATM/Debit card, even if the withdrawal results in an advance being made from your overdraft subaccount.

**5.   FINANCE CHARGE --** The dollar amount you pay for money borrowed is called a "finance charge" and begins on the date of each advance. A finance charge will be computed separately for each separate balance under the Plan. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made a payment) is multiplied by the applicable daily periodic rate. The sum of these amounts is the finance charge owed. The balance used to compute the finance charge is the unpaid balance each day after payments and credits to that balance have been subtracted and any additions to the balance have been made. In addition to interest, we may charge other finance charges which are disclosed on the Addendum. If the interest rate is a variable interest rate, the Addendum explains how the variable interest rate works.

**6.   SECURITY --** You pledge as security for the Plan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with us now and in the future, except to the extent such pledge is specifically prohibited by law. If a specific dollar amount is pledged for an advance, we will freeze shares in that account to the extent of the outstanding balance for the advance. Otherwise, your pledged shares may be withdrawn unless you are in default. **If credit union has a federal charter: Statutory Lien --** If you are in default on a financial obligation to us, federal law gives us

*(continued on next page)*

## SIGNATURES

**1.    You have received and read the LOANLINER Credit and Security Agreement including the Addendum ("Agreement") and Borrower Copy of the LOANLINER Credit/Security Agreement PLUS and Voluntary Payment Protection. By signing below you agree to be bound by the terms of the Agreement.

**2.    You grant us a security interest in all individual and joint share and/or deposit accounts you have with us now and in the future to secure what you owe under the LOANLINER Credit and Security** Agreement, except if such a grant is specifically prohibited by law. When you are in default, you authorize us to apply the balance in these accounts to any amounts due. Shares and deposits in an Individual Retirement Account, and any other account that would lose special tax treatment under state or federal law if given as security, are not subject to the security interest you have given in your shares and deposits.

| X | *[signature] W.B. Stewart III* | (SEAL) | | X | | (SEAL) | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BORROWER 1 SIGNATURE | | | DATE | BORROWER 2 SIGNATURE | | | DATE |

©CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2003, 04, 06, ALL RIGHTS RESERVED

CREDIT UNION COPY

FLEXIBLE AGREEMENT SYSTEM
PAGE 1 OF 4    KCABJO (BXX078 LASER)



EXHIBIT "B"

| SF Police Credit Union | | DATE 01/08/2007 |
|---|---|---|

## CREDIT AND SECURITY AGREEMENT (continued)

the right to apply the balance of shares and dividends in all individual and joint accounts you have with us to satisfy that obligation, except where such right is specifically prohibited. After you are in default, we may exercise this right without further notice to you. (We have a federal charter if our name includes the term "Federal Credit Union.") **If credit union is state chartered, except in Ohio, Rhode Island, and Massachusetts:** We have a statutory lien on the shares and dividends and, if any, the deposits and interest in all individual and joint accounts you have with us and may exercise our rights under the lien to the extent permitted by both state and Federal law. (We are state chartered if our name does not include the term "Federal Credit Union.") **For all borrowers: The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default, except if specifically prohibited by law.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

Additional security for the Plan may be required at the time of an advance. If a subaccount identifies a type of property (such as "New Cars") you must give that type of property as security when you get an advance under that subaccount. A subaccount name such as "Other Secured" means you must provide security acceptable to us when you obtain an advance under that subaccount. Property you give as security will secure all amounts owed under the Plan and all other loans you have with us now or in the future, except to the extent such right is specifically prohibited by law, and except any loan secured by your principal dwelling. Property securing other loans you have with us may also secure the Plan.

**7.   VOLUNTARY PAYMENT PROTECTION** —We may offer Voluntary Payment Protection to you. Voluntary Payment Protection is not necessary to obtain credit. If you purchase Voluntary Payment Protection from us, you authorize us to add the fees or insurance charges monthly to your loan balance and charge you interest on the entire balance. At our option we will change your payment or the period of time necessary to repay the loan balance. The rate used to determine the fees or insurance charges may change in the future. If the rate changes, we will provide any notices required by applicable law.

**8.   PERIODIC STATEMENT** — On a regular basis you will receive a statement showing all transactions under the Plan during the period covered by the statement. Statements and notices will be sent to you at the most recent address you have given us in writing. Unless applicable law requires notice to each joint borrower, notice to any one of you will be notice to all.

**9.   JOINT ACCOUNTS** — If this is a joint account, each of you is individually and jointly responsible for paying all amounts owed. That means we can enforce our rights under the Plan against any one of you individually or against all of you together. If you give us inconsistent instructions, we can refuse to follow your instructions. Unless our written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). Any joint accountholder may terminate the Plan by giving us prior written notice. If any of you terminate the Plan, the Plan is terminated for all of you. You remain liable individually and jointly for all advances incurred before termination.

**10. FEES AND CHARGES** — If you give us a security interest in certain types of property, we may charge you a filing fee to perfect our interest in the property. If we do, the amount of the fee will be disclosed to you at the time you obtain an advance. We may also charge you other fees in connection with the Plan. Our current fees are disclosed on the Addendum and will be added to your loan balance unless you pay them in cash.

**11.  UPDATING CREDIT INFORMATION** — You promise that you will promptly give us written notice if you move, change your name or employment, or if any other information you provided to us changes. Upon our request, you also agree to provide us updated financial information.

**12. DEFAULT** – *The following paragraph applies to borrowers in Idaho, Kansas, Maine and state chartered credit unions lending to South Carolina borrowers:* You will be in default if you do not make a payment of the amount required when it is due. You will also be in default if we believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

*The following paragraph applies only to borrowers in Wisconsin:* You will be in default if you fail to make a payment when due two times during any 12 month period. You will be in default if breaking any promise made under the Plan materially impairs your ability to repay what you owe or materially impairs the condition, value, or protection of or our right in any property you gave as security.

*The following paragraph applies only to borrowers in Iowa:* You will be in default if you are more than 10 days late in making a payment. You will also be in default if you do not comply with the terms of the Plan and your failure to comply materially impairs any property you gave as security or your ability to repay what you owe under the Plan.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers:* You will be in default if you do not make a payment of the amount required when it is due. You will be in default if you break any promise made under the Plan or if anyone is in default under any security agreement made in connection with an advance under the Plan. You will be in default if you die, file for bankruptcy, become insolvent, if you make any false or misleading statements in any credit application or update of credit information, or if something happens we believe may substantially reduce your ability to repay what you owe. You will also be in default under the Plan if you are in default under any other loan agreement with us.  You will be in default if any property you have given as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

**13.         ACTIONS AFTER DEFAULT** – *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers:* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving us advance notice.

*The following paragraph applies to federally chartered credit unions lending to South Carolina borrowers and to borrowers in all other states except Wisconsin:* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

*The following paragraphs apply to borrowers in all states except Wisconsin:* If immediate payment is demanded, you will continue to pay interest until what you owe has been repaid at the applicable interest rates in effect or, if applicable, at the default rate disclosed on the Addendum.

(Continued on next page)

©CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2003, 04, 06,  ALL RIGHTS RESERVED      CREDIT UNION COPY      FLEXIBLE AGREEMENT SYSTEM
PAGE 2 OF 4      KCABJO (BXX076 LASER)

| SF Police Credit Union | | |
|---|---|---|
| | DATE | 01/08/2007 |

## CREDIT AND SECURITY AGREEMENT (continued)

If a demand for immediate payment has been made, your shares and/or deposits can be applied towards what you owe as provided in the section above called "Security", except to the extent such a right is specifically prohibited by law. We can also exercise any other rights given by law when you are in default.

You agree the Credit Union has the right to take possession of any property given as security under the Plan, without judicial process, if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property, not covered by this Agreement, that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available for you to claim.

After we have possession of the property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

You must pay any amount that remains unpaid after the sale money has been applied to any unpaid balance under the Plan. You agree to pay interest on that amount at the same rate as the advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount has been paid.

*The following paragraph applies only to Wisconsin borrowers:* When you are in default and after expiration of any right you have under applicable state law to cure your default, we may require immediate payment of your outstanding loan balance under the Plan and seek possession of property given as security. You may voluntarily give the property to us if you choose, or we may seek to take possession of the property by judicial process. If we repossess the property, you agree to pay reasonable expenses incurred in disposing of the property. If the property is a motor vehicle, mobile home, trailer, snowmobile, boat or aircraft, you will also be required to pay any costs permitted by Section 422.413 of the Wisconsin Statutes. You must pay any amount that remains unpaid after the sale money has been applied to what you owe under the Plan. You agree to pay interest on any unpaid amount at the same rate as the advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount is paid.

If the property is located outside Wisconsin at the time of default, we may take possession of the property without judicial process, if permitted by the state where the property is located.

### 14. CANCELING OR CHANGING THE PLAN – The following paragraph applies only to state chartered credit unions lending to Illinois borrowers:
We have the right to change the terms of the Plan from time to time after giving you any advance notice required by law. Any change to the interest rate or other charges will apply to future advances.

*The following paragraph applies only to borrowers in Wisconsin:* We can change the terms of the Plan from time to time in accordance with Section 422.415 of the Wisconsin Statutes. You will be notified of any change in terms. An increase in the daily periodic rate under a variable rate interest rate is not considered a change in terms under the Plan. We can cancel the entire Plan or any part of the Plan at any time. You may cancel the Plan at any time by giving us prior written notice. Your obligation to pay the unpaid balances under the terms of the Plan continues whether you

or the credit union cancel the Plan, except to the extent that your liability is limited by Section 422.4155 of the Wisconsin Statutes.

*The following paragraph applies only to borrowers in Iowa:* We can change the terms of the Plan from time to time after giving you any advance notice required by law. A change that increases the rate of finance charge or other charge, that increases the amount of your payments, or that otherwise adversely affects existing balances will apply to existing balances only if you agree to the change or you use the Plan after receiving notice that your use of the Plan means you agree the change applies to existing balances.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to Illinois borrowers:* We have the right to change the terms of the Plan from time to time after giving you any advance notice required by law. Any change in the interest rate will apply to future advances, and, at our discretion and subject to any requirements of applicable law, will also apply to unpaid balances.

*The following paragraph applies to all but Wisconsin borrowers:* An increase in the daily periodic rate under a variable interest rate is not considered a change in terms under the Plan. We can cancel the entire Plan or any part of the Plan at any time. You may cancel the Plan at any time by giving us prior written notice. Your obligation to pay the unpaid balances under the terms of the Plan continues whether you or the Credit Union cancel the Plan.

*Paragraphs 15 through 23 apply to any property you give as security.*

### 15. THE SECURITY FOR THE PLAN – You give us what is known as a security interest in all property described in any receipt, voucher or other document you receive for an advance ("the Advance"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the Advance or any extensions, renewals or refinancing of the Advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

### 16. WHAT THE SECURITY INTEREST COVERS/CROSSCOLLATERAL PROVISIONS – The security interest secures the Advance described in the receipt, voucher or any other document you receive at the time of the Advance and any extensions, renewals or refinancings of the Advance. **It also secures any other advances you have now or receive in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence.** If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the Advance and not other amounts you owe.

### 17. OWNERSHIP OF THE PROPERTY – You promise that you own all property you give as security or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the Advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

(Continued on next page)

©CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2003, 04, 06, ALL RIGHTS RESERVED    CREDIT UNION COPY    FLEXIBLE AGREEMENT SYSTEM
PAGE 3 OF 4    KCABJO (BXX078 LASER)

| SF Police Credit Union | |
|---|---|
| | DATE   01/08/2007 |

## CREDIT AND SECURITY AGREEMENT (continued)

**18. PROPERTY INSURANCE, TAXES AND FEES –** You must maintain property insurance on all property that you give as security under the Plan. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy. You also promise to pay all taxes and fees (like registration fees) due on the property.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to an advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of an advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**19. INSURANCE NOTICE –** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**20. PROTECTING THE SECURITY INTEREST –** If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file    what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You promise to do whatever else we think is necessary to protect our

security interest in the property. You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law.

**21. USE OF PROPERTY –** Until the Advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose. (7) Not to retitle property in another state without telling us.

**22. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE –** THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOS- SESSION. IF IT IS REPOSSESSED AND SOLD TO SOME- ONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**23. NOTICE FOR ARIZONA OWNERS OF PROPERTY –** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**24. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE PLAN –** We can delay enforcing any of our rights under this Plan any number of times without losing the ability to exercise our rights later. We can enforce this Plan against your heirs or legal representatives. If we change the terms of the Plan, you agree that this Plan will continue to protect us.

**25. CONTINUED EFFECTIVENESS –** If any part of this Plan is determined by a court to be unenforceable, the rest will remain in effect.

**26. NOTICE TO UTAH BORROWERS –** This written agree- ment is a final expression of the agreement between you and the Credit Union. This written agreement may not be contradicted by evidence of any oral agreement.

**27. The following is required by Vermont law – NOTICE TO CO-SIGNER – YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

### FOR CREDIT UNION USE ONLY

| DATE | | APPROVED | APPROVED LIMITS: | SIGNATURE | LINE OF CREDIT | OTHER | OTHER | DEBT RATIO/SCORE BEFORE   AFTER |
|---|---|---|---|---|---|---|---|---|
| | | DENIED (Adverse Action Notice Sent) | | $ | $ | $ | $ | |

LOAN OFFICER COMMENTS:

SIGNATURES:
X   _K Patty_                01/08/2007        X                                      01/08/2007
                              DATE                                                    DATE

©CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2003, 04, 06, ALL RIGHTS RESERVED



2550 IRVING STREET
P.O. BOX 22219
SAN FRANCISCO, CA  94122-021

**LOANLINER.**

## CREDIT INSURANCE

You can protect your financial future by signing up for **voluntary credit insurance** below. Enroll by simply indicating your preference in the "Credit Insurance Application" section below. Your credit union will be happy to explain the various insurance options and coverage. The cost is reasonable.

### CREDIT INSURANCE APPLICATION AND SCHEDULE

**CUNA MUTUAL GROUP**
*CUNA Mutual Insurance Society*
P.O. Box 391 • 5910 Mineral Point Road • Madison, WI 53701-0391

**YOU ARE NOT ELIGIBLE FOR INSURANCE UNDER THIS PLAN IF YOU HAVE REACHED YOUR 65TH BIRTHDAY. YOU MAY BE ELIGIBLE FOR LIFE INSURANCE UNDER ANOTHER PLAN.**

You understand you do not have to buy this insurance to get your loan approved.  You are applying for the credit insurance marked and authorizing the Creditor to add the charges for insurance to your loan each month as they become due.  You have the right to stop this authorization. Your signature below means you agree that:

1. You are eligible for disability insurance as to each advance only if you are working for wages or profit 30 hours a week or more on the date you sign for the advance.  If you are not, particular advance will not be insured until you return to work. You are insured only for advances actually received by you.  You are not insured for any unused credit which may be available to you.

2. Each month the insurance charge is calculated by multiplying the insured outstanding principal balance of your loan on the billing date by the rate shown in the Schedule.  We can change the rate shown in the Schedule.  We can change the rate later on.  But if we do, we will let you know in advance.  The new rate will apply only to charges for insurance made after the date of the rate change.

3. Only the primary borrower is eligible for disability insurance.

4. Disability insurance will stop on the billing date after you reach your 65 th birthday.

5. Life insurance for you and your co-borrower will stop on the billing date after you reach your 70 th birthday.

NOTICE:    THIS INSURANCE MAY NOT COVER AN ADVANCE OR CHARGE UNDER YOUR CREDIT LINE IF YOUR DISABILITY OR DEATH RESULTS FROM CONDITION FOR WHICH YOU HAVE SEEN A DOCTOR OR A CHIROPRACTOR IN THE LAST SIX MONTHS BEFORE THE ADVANCE OR CHARGE. (Refer to "WHAT WE WON'T PAY" in this Certificate for details.)

### Disability Insurance May End Before Life Insurance

| CREDIT INSURANCE APPLIED FOR | YES | NO | MONTHLY PREMIUM PER $100 OF INSURED DEBIT | MAXIMUM AMOUNT OF LIFE INSURANCE | MAXIMUM MONTHLY DISABILITY BENEFIT |
|---|---|---|---|---|---|
| 30-Day Elimination Period Single Disability | ☐ | ☑ | $   .380 | N/A | $   600.00 |
| Single Credit Life | ☐ | ☑ | $   .068 | $  30,000 | **DISABILITY RATING GROUP** |
| Joint Credit Life | ☐ | ☑ | $   .116 | $  30,000 | I |

| | |
|---|---|
| PRIMARY BORROWER (CALLED YOU) | **WILLIAM BULLOCK STEWART III** |
| PRIMARY BORROWER'S ADDRESS | 1461 FORRESTAL AVE  SAN JOSE CA 95110 |
| CO-BORROWER (ALSO CALLED YOU) | |

| | | |
|---|---|---|
| DATE   01/08/2007 | BORROWER'S ACCOUNT NUMBER | 1363718 |
| CREDITOR BENEFICIARY (CREDIT UNION NAME) | GROUP POLICY NUMBER    SECOND BENEFICIARY | SOURCE CODE |
| SF Police Credit Union | 104-0864-7 | OD57682 |

| DATE | DATE OF BIRTH OF BORROWER | AGE | DATE | CO-BORROWER'S DATE OF BIRTH | AGE |
|---|---|---|---|---|---|
| 01/08/2007 | 11/11/1955 | 0 | 01/08/2007 | | 0 |

**X** *W B Stewart III*
PRIMARY BORROWER SIGNATURE

**X**
CO-BORROWER SIGNATURE

APP.825-0786CA

CLASS OF BUSINESS: C 18 NON-STD

SFP003

ICA023 (LASER)

# CUNA MUTUAL GROUP

*CUNA Mutual Insurance Society*

P.O. Box 391 • 5910 Mineral Point Road • Madison, WI 53701-0391
Ph: WI 800/937-2644 • CA 800/441-2644

## CREDIT INSURANCE DISCLOSURE

- Credit insurance is voluntary and is not required to secure a loan or an extension of credit.

- This insurance coverage may provide duplication of coverage already provided by your other personal insurance policies or by another source of coverage.

- The credit insurance agent is not qualified or authorized to evaluate the adequacy of your existing coverage.

- You may cancel the insurance at any time. If you cancel this insurance within 30 days from the delivery of the certificate, your premium will be refunded in full. If you cancel at any time thereafter, any unearned premium will be refunded in accordance with applicable law.

By signing, you acknowledge the above disclosures

| X _N. B. Stewart_ FEB 8 2008 | X |
| --- | --- |
| SIGNATURE OF BORROWER    DATE | SIGNATURE OF CO-BORROWER    DATE |

ICA340 (LASER)

**SF POLICE CREDIT UNION**
PO BOX 22219
SAN FRANCISCO, CA 94122-0219
P: 415-564-3800 / F: 415-564-5519



## ADDENDUM

This addendum is incorporated into and becomes part of your LOANLINER® Credit Agreement.   Please keep this attached to your LOANLINER® Credit Agreement.

| EFFECTIVE DATE | REPLACES ADDENDUM DATED | PLAN NUMBER |
|---|---|---|
| January 1, 2007 | September 1, 2006 | 104-0864-7 |

| Subaccount Description | Margin | Approx Term (in months) | Daily Periodic Rate (equals the annual percentage rate divided by 365 days) | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| Overdraft * | | | 0.00042192 | 15.400% |
| Co-Maker | | 60 | 0.00044932 | 16.400% |
| Personal Choice | | 12 | 0.00024658 | 9.000% |
| | | 24 | 0.00027397 | 10.000% |
| | | 36 | 0.00030137 | 11.000% |
| | | 48 | 0.00032877 | 12.000% |
| | | 60 | 0.00034932 | 12.750% |
| | | 72 | 0.00036986 | 13.500% |
| Bill Consolidation | | 12 | 0.00028767 | 10.500% |
| | | 24 | 0.00031507 | 11.500% |
| | | 36 | 0.00034247 | 12.500% |
| | | 48 | 0.00039452 | 14.400% |
| | | 60 | 0.00042192 | 15.400% |
| | | 72 | 0.00044932 | 16.400% |
| Living Trust | | 12 | 0.00023288 | 8.500% |
| New Auto, 2006 | | 36 | 0.00015068 | 5.500% |
| | | 48 | 0.00015753 | 5.750% |
| | | 60 | 0.00016438 | 6.000% |
| | | 72 | 0.00017808 | 6.500% |
| | | 84 | 0.00018493 | 6.750% |
| Used Auto, 2001-2006 | | 36 | 0.00015068 | 5.500% |
| | | 48 | 0.00015753 | 5.750% |
| | | 60 | 0.00016438 | 6.000% |
| | | 72 | 0.00017808 | 6.500% |
| | | 84 | 0.00018493 | 6.750% |
| Early Model Autos, 1986-2000 | | 36 | 0.00015068 | 5.500% |
| | | 60 | 0.00017808 | 6.500% |
| New & Used Motorcycles, 2002-2006 | | 36 | 0.00015068 | 5.500% |
| | | 48 | 0.00015753 | 5.750% |
| | | 60 | 0.00016438 | 6.000% |
| Share Secured ** | share rate + 3.0% | 60 | 0.00010274 | 3.750% |
| Certificate Secured *** | cert. Rate + 3.0% | | | |
| New or Used  Boat / Trailer | | 36 | 0.00016438 | 6.000% |
| | | 48 | 0.00016438 | 6.000% |
| | | 60 | 0.00016438 | 6.000% |
| New & Used Motor Homes, Custom Vans, RV's | | 36 | 0.00015068 | 5.500% |
| | | 48 | 0.00015753 | 5.750% |
| | | 60 | 0.00016438 | 6.000% |

**LOANLINER®**

| New & Used Travel Trailers | | | | |
|---|---|---|---|---|
| | | 36 | 0.00015068 | 5.500% |
| | | 48 | 0.00015753 | 5.750% |
| | | 60 | 0.00016438 | 6.000% |

*** CERTIFICATE SECURED:  The Annual Percentage Rate ( APR ) will be the dividend rate being paid on the Certificate offered as security (Index) plus the percentage shown in the "% Above Index" column above.  The Certificate must be renewed until the advance is completely paid.  Failure to renew will result in default under the Plan.  When the Certificate is renewed the APR will change to reflect the new dividend rate.  Any increase in APR will result in either more payments of the same amount until what you owe has been repaid or higher payments.   The present APR will be disclosed at the time of the advance.

** SHARE SECURED:   The Annual Percentage Rate ( APR ) will be the dividend rate being paid on the regular shares (Index) plus the percentage shown in the "% Above Index"  column above.

OVERDRAFT PROTECTION: Will draw from the line in increments of $100.00, when needed.  The minimum monthly payment will be $50.00.

COLLECTION COSTS: You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney fees.

LATE CHARGES:  Will be calculated based upon 5% of the monthly payment or $10.00, whichever is greater if received 10 days after the payment due date.

LOANLINER.



# OPEN END LOAN PURPOSE

AMOUNT OF LOAN REQUEST    $    25,000

PURPOSE FOR LOAN REQUEST    to buy stocks

| WHAT YOU OWE | CREDITOR NAME OTHER THAN SFPCU | MONTHLY PYMT |
|---|---|---|
| MORTGAGE/RENT | | $ |
| AUTO LOAN (S) | | $ |
| | | $ |
| CREDIT CARDS | WaMu | $ 23 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| OTHER | | $ |
| FAMILY SUPPORT | | $ |

## ***COMPLETE THIS FORM IN FULL TO EXPEDITE YOUR LOAN REQUEST***

**NOTE:** Married applicants may apply for an individual account. Check the appropriate box to indicate Individual or Joint Credit.

☒ **Individual Credit** If this loan is secured by property, and your spouse's name appears on the title to the property, he/she must sign this Application as an "Owner of Collateral".

☐ **Joint Credit**

My/Our current status is:    ☐ Married    ☐ Separated    ☒ Unmarried (Single, Divorced, Widowed)
☐ State-Registered Domestic Partner

→X   N B Stewart III          1363718          1-23-07
SIGNATURE          MEMBER NO.          DATE

SIGNATURE          MEMBER NO.          DATE

**Office Use Only:**
**Open End Flag**
☐ Single    ☐ Joint    _____ Credit Protection Flag
**Initiated Delivery Channel:**
☐ Marketing Piece   ☐ Newsletter   ☐ Cross-selling Efforts   ☐ Member Referral   ☐ Other _____

Primary - Authenticity Verified by: ☐ In Person ☐ Phone; Joint - Authenticity Verified by: ☐ In Person ☐ Phone

Member Product(s)
☐ ATM Card
☐ Credit Card    ☐ Voice Resp.    ☒ Periodic Payment
☐ Debit Card    ☐ Home Banking    ☐ Bill Payment
                          ☒ Payroll/ACH

# EXHIBIT "C"

## Larkspur Consultants, Inc

1600 Saratoga Ave Ste 403-BX 223
San Jose, CA 95129
408-453-0530/Off-Fax

Subject: Verification of employment and wages

To Whom It May Concern:

Please be advised, that William B. Stewart, III, is a current employee/consultant. His employment is full-time, and he is working on a continuous contract.

His total earnings in 2006 were, $152,011.80, with wages issued once a month, which includes a monthly bonus.

Thank you for your inquiry. If you have any further questions, you can contact us directly.

Yours Truly,

*Elaine Cannella mj*

Elaine Cannella
Executive Employment Associate
Larkspur Consultants, Inc

152,011.80
÷ 12
12,667.65

EC:mj

EXHIBIT "D"

JAN-23-2007(TUE) 09:59    SF POLICE CREDIT UNION-SAN MATEO  (FAX)650  '27 8312    P.003/003



**SF Police CREDIT UNION**
2550 IRVING STREET
P.O. BOX 22219
SAN FRANCISCO, CA  94122-021

**LOANLINER.**

**Open-End Disbursement
Receipt** *Plus*

### BORROWER INFORMATION

| BORROWER 1 NAME | BORROWER 2 NAME | ACCOUNT NUMBER | DATE |
|---|---|---|---|
| WILLIAM BULLOCK STEWART III | | 1363718 L4.1 | 01/23/2007 |

### SECURITY OFFERED

THE ADVANCE IS SECURED BY YOUR SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING PROPERTY:

| PROPERTY/MODEL | YEAR | I.D. NUMBER | VALUE | KEY NUMBER |
|---|---|---|---|---|
| | | | | |

| PLEDGE OF SHARES AND/OR DEPOSITS | ACCOUNT NUMBER | PLEDGE OF SHARES AND/OR DEPOSITS | ACCOUNT NUMBER |
|---|---|---|---|
| | | | |

☐ **CONSUMERS' CLAIMS AND DEFENSES** —*The following paragraph applies to the Advance only if the box is checked.*
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### SUBSEQUENT ELECTION FOR VOLUNTARY PAYMENT PROTECTION

You can now voluntarily elect to become insured with the coverage(s) shown below. In order for coverage to become effective you must meet all insurance eligibility requirements stated in the Credit Insurance Application/Schedule. NOTE: The insurance you're applying for contains certain terms and exclusions. Refer to your certificate for coverage details. If you need a copy of the insurance Certificate, just ask. By signing below, you authorize us to add the charges for the insurance to your outstanding balance each month. Coverage election applies to the entire balance on this subaccount. Insurance rates are subject to change.

| YOU ELECT THE FOLLOWING: | COST PER $100 OF YOUR MONTHLY LOAN BALANCE | NAME OF INSURED(S) |
|---|---|---|
| 30-Day Elimination Period Single Disabilit | $ .380 | |
| Single Credit Life | $ .066 | |
| Joint Credit Life | $ .116 | |

### REPAYMENT TERMS

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | INTEREST RATE IS: | OTHER FEES (Amount and Description) | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|---|
| 0.00034932 | 12.75 % | 12.750 | | $25,000.00 |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $3,921.40 | $647.80 | 02/15/2007 | Monthly | | |

### SIGNATURE

By signing below, or by endorsing the proceeds check for the advance described above, or by having the loan proceeds deposited into your share/share draft account or paid to a third party, you agree:

(1) that the property described in the Security Offered section above ("Property") is security under the terms of the LOANLINER Credit and Security Agreement (the "Plan") for all amounts you owe under the Plan and that the property description is incorporated into and a part of the Plan;
(2) that the Property is also security for any other loans, including but not limited to, any credit loan that you have with the credit union now or in the future;
(3) that you will make the payments disclosed above in accordance with the terms of the Plan; and
(4) that if you are now electing credit insurance, you are voluntarily electing the coverage checked in the Subsequent Election for Voluntary Payment Protection section above.

| X _(signature)_ | (SEAL) | 01/23/2007 | X | (SEAL) | 01/23/2007 |
|---|---|---|---|---|---|
| BORROWER 1 SIGNATURE | | DATE | BORROWER 2 SIGNATURE | | DATE |

### FOR CREDIT UNION USE ONLY

| REQUESTED 25K | MEMBER PAYS PREMIUM FOR: | CHECK NUMBER: | | BRANCH NUMBER: |
|---|---|---|---|---|
| DATE 1/23/06 | LOAN OFFICER COMMENTS: | PLAN/SUBACCOUNT NO.: | PROCESSED BY: | LOAN OFFICER INITIALS |

© CUNA MUTUAL GROUP, 1980, 82, 84, 85, 89, 90, 99, 2001, ALL RIGHTS RESERVED        SFP011        VXXX96 (LASER)

# EXHIBIT " E "



**SF Police CREDIT UNION** SINCE 1953

2550 IRVING STREET
P.O. BOX 22219
SAN FRANCISCO, CA 94122-021



**LOANLINER.**

**Open-End Disbursement Receipt Plus**

## BORROWER INFORMATION

| BORROWER 1 NAME | BORROWER 2 NAME | ACCOUNT NUMBER | DATE |
|---|---|---|---|
| WILLIAM BULLOCK STEWART III | | 1363718 L4.1 | 01/23/2007 |

## SECURITY OFFERED

THE ADVANCE IS SECURED BY YOUR SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING PROPERTY:

| PROPERTY/MODEL | YEAR | I.D. NUMBER | VALUE | KEY NUMBER |
|---|---|---|---|---|
| | | | | |

| PLEDGE OF SHARES AND/OR DEPOSITS | ACCOUNT NUMBER | PLEDGE OF SHARES AND/OR DEPOSITS | ACCOUNT NUMBER |
|---|---|---|---|
| | | | |

☐ **CONSUMERS' CLAIMS AND DEFENSES** -- *The following paragraph applies to the Advance only if the box is checked.*

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## SUBSEQUENT ELECTION FOR VOLUNTARY PAYMENT PROTECTION

You can now voluntarily elect to become insured with the coverage(s) shown below. In order for coverage to become effective you must meet all insurance eligibility requirements stated in the Credit Insurance Application/Schedule. **NOTE: The insurance you're applying for contains certain terms and exclusions; Refer to your certificate for coverage details.** If you need a copy of the Insurance Certificate, just ask. By signing below, you authorize us to add the charges for the insurance to your outstanding balance each month. Coverage election applies to the entire balance on this subaccount. Insurance rates are subject to change.

| YOU ELECT THE FOLLOWING: | COST PER $100 OF YOUR MONTHLY LOAN BALANCE | NAME OF INSURED(S) |
|---|---|---|
| 30-Day Elimination Period Single Disabilit | $ .380 | |
| Single Credit Life | $ .068 | |
| Joint Credit Life | $ .116 | |

## REPAYMENT TERMS

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | INTEREST RATE IS: | OTHER FEES (Amount and Description) | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|---|
| 0.00034932 | 12.75 % | 12.750 | | $25,000.00 |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $9,921.40 | $567.00 | 02/15/2007 | Monthly | | |

## SIGNATURE

By signing below, or by endorsing the proceeds check for the advance described above, or by having the loan proceeds deposited into your share/share draft account or paid to a third party, you agree:

(1) that the property described in the Security Offered section above ("Property") is security under the terms of the LOANLINER Credit and Security Agreement (the "Plan") for all amounts you owe under the Plan and that the property description is incorporated into and a part of the Plan;
(2) that the Property is also security for any other loans, including but not limited to, any credit loan that you have with the credit union now or in the future;
(3) that you will make the payments disclosed above in accordance with the terms of the Plan; and
(4) that if you are now electing credit insurance, you are voluntarily electing the coverage checked in the Subsequent Election for Voluntary Payment Protection section above.

| X | (SEAL) 01/23/2007 | X | (SEAL) 01/23/2007 |
|---|---|---|---|
| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE | DATE |

## FOR CREDIT UNION USE ONLY

| REQUESTED: | MEMBER PAYS PREMIUM FOR: | CHECK NUMBER: | BRANCH NUMBER: |
|---|---|---|---|
| | | PLAN/SUBACCOUNT NO.: | PROCESSED BY: |
| DATE | LOAN OFFICER COMMENTS: | | LOAN OFFICER INITIALS |

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2001, ALL RIGHTS RESERVED          SFP011          VXX098 (LASER)

1  Albie Jachimowicz (SBN104549)
2  Patrick C. Stokes (SBN251558)
   HINKLE, JACHIMOWICZ, POINTER & EMANUEL
3  2007 West Hedding Street, Suite 100
   San Jose, California 95128
4  Tel.: (408) 246-5500
   Fax: (408) 246-1051
5
6  Attorneys for Defendant and Cross-Complainant
7  WILLIAM BULLOCK STEWART, III

                                                    M. Rosales
8
                    SUPERIOR COURT OF CALIFORNIA
9
               COUNTY OF SANTA CLARA - UNLIMITED
10
11 SAN FRANCISCO POLICE                  )
   CREDIT UNION,                         )   No. 1-07-CV-089409
12                                       )
            Plaintiff,                   )   **ANSWER TO UNVERIFIED SECOND**
13                                       )   **AMENDED COMPLAINT**
   vs.                                   )
14                                       )
15 WILLIAM BULLOCK STEWART               )
   III, and DOES 1 - 50, inclusive,     )
16                                       )
            Defendants.                  )
17                                       )
18
19         Defendant, WILLIAM BULLOCK STEWART, III, ("STEWART") by
20 and through his attorney, answers the unverified Complaint of Plaintiff,
21 SAN FRANCISCO POLICE CREDIT UNION, ("SFPCU"), alleging as
22 follows:
23 1.    STEWART generally denies each and every allegation of the
24 unverified Complaint on file herein and denies further that SFPCU is
25 entitled to any sum of damages at all.

26              **AFFIRMATIVE DEFENSES**

27 2.    AS FOR A FIRST, SEPARATE AND DISTINCT AFFIRMATIVE
28 DEFENSE, STEWART alleges that the Complaint, and each cause of

HINKLE JACHIMOWICZ POINTER & EMANUEL
2007 W. HEDDING STREET
SAN JOSE, CALIFORNIA 95128
(408) 246-5500

                              1
ANSWER TO SECOND AMENDED COMPLAINT

**EXHIBIT "2"**

1  action thereof, fail to state facts sufficient to constitute a cause of action

2  against STEWART, and further fail to state facts upon which any claim

3  can be based.

4  3.    AS FOR A SECOND, SEPARATE AND DISTINCT AFFIRMATIVE

5  DEFENSE, Defendants reserves the right to assert additional affirmative

6  defenses that Defendant deems appropriate.

7                              **PRAYER FOR RELIEF**

8         WHEREFORE, STEWART prays for judgment against SFPCU as

9  follows:

10  1.    That SFPCU take nothing by the Complaint, which will be

11  dismissed with prejudice;

12  2.    For STEWART's costs of suit herein; and

13  3.    For such other and further relief as the Court deems just and

14  proper.

15

16  Dated: January 15, 2008          **HINKLE, JACHIMOWICZ, POINTER & EMANUEL**

17

18

19                                   Patrick C. Stokes
                                     Attorney for Plaintiff

20

21

22

23

24

25

26

27

28

ANSWER TO SECOND AMENDED COMPLAINT

HINKLE JACHIMOWICZ POINTER & EMANUEL
2007 W. HEDDING STREET
SAN JOSE, CALIFORNIA 95128
(408) 246-5500

Case Name: **Stewart v. San Francisco Police Credit Union**
Case Number: **1-07-CV-089409**
Court: **Santa Clara County Superior Court - Unlimited**

### PROOF OF SERVICE

I, the undersigned, declare:

I am now and at all times herein mentioned a resident of the County of Santa Clara; I am over the age of eighteen years; and I am not a party to the within action or cause.

On **January 15, 2008**, I served a true copy of the following documents:
**ANSWER TO UNVERIFIED SECOND AMENDED COMPLAINT**   M. Rosales

on the following parties:
**Austin D. Garner**
**Scheer Law Group, LLP**
**155 North Redwood Drive, Suite 100**
**San Rafael, California 94903**
**Counsel for Plaintiff, SAN FRANCISCO POLICE CREDIT UNION**

by the following means:

X   **(BY MAIL)** I am readily familiar with the business practice at my place for collection and processing of correspondence for mailing within the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service the same day in the ordinary course of business.

_____   **(BY EXPRESS MAIL)** I deposited such envelope to placed for collection and handling via Express Mail following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for Express Mail/UPS Next Day Delivery. On the same day that material is placed for collection, it is picked up by UPS and San Jose, Santa Clara County, California.

_____   **(BY FAX TRANSMISSION)** By transmitting a true copy thereof from sending on facsimile machine telephone number (408) 246-1051 to the above-referenced parties at the receiving facsimile machine numbers shown above.

_____   **(BY PERSONAL DELIVERY)** I caused each such envelope to be delivered by hand to the above addressee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on **January 15, 2008** in San Jose, California.

Patrick C. Stokes

1

JEFFREY E. BRUNTON  #2833
Office of Consumer Protection
235 South Beretania Street, Room 801
Honolulu, Hawaii 96813-2419
Telephone:  (808)586-2636

Attorney for Plaintiff

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2008 MAY -8  PM 3: 26

F. OTAKE
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

STATE OF HAWAII, by its Office of )
Consumer Protection, )
                            )
            Plaintiff, )
                            )
          vs. )
                            )
STEWART UNIVERSITY OF AMERICA, )
a District of Colombia non-profit )
corporation, )
                            )
          Defendant. )
                            )

CIVIL NO. 08-1-0926-05  E E H
(Other Civil Action)

COMPLAINT AND SUMMONS

## COMPLAINT

      Plaintiff, for a cause of action against the above-named defendant, avers
and alleges that:

### ALLEGATIONS COMMON TO ALL COUNTS

     1.     This is an action brought by the Office of Consumer Protection of the
State of Hawaii pursuant to Hawaii Rev. Stat. Chapters 446E, 480 and 487 seeking to
enjoin the Defendant from engaging in certain acts or practices in violation of Hawaii's
consumer protection laws and to obtain other and additional relief.



EXHIBIT " 3 "

2.      This court has subject matter jurisdiction over this case pursuant to Hawaii Rev. Stat. §§ 480-21 and 603-21.5.

3.      Defendant Stewart University of America ("SUA") is a District of Colombia non-profit corporation.  On May 1, 2008 it obtained a Certificate of Authority for Foreign Corporation from the Business Registration Division of the State of Hawaii.

4.      Defendant SUA is not now or never has been accredited by a recognized accrediting agency or association recognized by the United States Secretary of Education.

5.      SUA is an "unaccredited institution" as that phrase is defined in Hawaii Rev. Stat. § 446E-1.

6.      SUA has or claims a "presence" in the State of Hawaii as that term is used in Haw. Rev. Stat. §446E-1.

### COUNT I
### FAILURE TO MAKE STATUTORY DISCLOSURES

7.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 6 as though fully set forth herein.

8.      Defendant SUA and its agents have failed to properly and adequately disclose in its website the fact that SUA is not fully accredited by any nationally recognized accrediting agency or association listed by the United States Secretary of Education in violation of Hawaii Rev. Stat. § 446E-2(a).

9.      Each and every day that SUA's website is viewable without properly and adequately disclosing the fact that SUA is and was not fully accredited by any nationally recognized accrediting agency or association listed by the United States

Secretary of Education constitutes a separate and independent violation of Hawaii Rev. Stat. § 446E-2(a).

10.    Violations of Hawaii Rev. Stat. § 446E-2(a) constitute a *per se* violation of Hawaii Rev. Stat. § 480-2(a).

## COUNT II
## SUGGESTIONS OF STATE LICENSING OR APPROVAL

11.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 10 as though fully set forth herein.

12.    SUA's website claims that "it is licensed as a post-secondary degree granting institution in the State of Hawaii" in violation of Hawaii Rev. Stat. §446E-5(a).

13.    Each and every day that SUA's website is viewable and contains claims of licensing or approval by the State of Hawaii constitutes a separate and independent violation of Hawaii Rev. Stat. § 446E-5(a).

14.    Violations of Hawaii Rev. Stat. § 446E-5(a) constitute *per se* violations of Hawaii Rev. Stat. § 480-2(a).

## COUNT III
## FAILURE TO DISCLOSE INABILITY TO LAWFULLY ISSUE DEGREES

15.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 14 as though fully set forth herein.

16.    Defendant SUA does not have an office in Hawaii, therefore it cannot lawfully issue post-secondary degrees.

17.    Defendant SUA's website fails to disclose that fact.

18.    Each and every day that SUA's website is viewable and fails to disclose that fact constitutes a separate and independent violation of Hawaii Rev. Stat. § 480-2(a).

## COUNT IV
## CLAIMS OF APPLICATION FOR FUTURE ACCREDITATION

19.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

20.    Defendant SUA's website claims that it is applying for accreditation in violation of Hawaii Rev. Stat. §446E-5(f).

21.    Each and every day that SUA's website is viewable and claims that it has applied for future accreditation constitutes a separate and independent violation of Hawaii Rev. Stat. § 446E-5(f).

22.    Violations of Hawaii Rev. Stat. § 446E-5(f) constitute *per se* violations of Hawaii Rev. Stat. § 480-2(a).

## COUNT V
## INJUNCTIVE RELIEF

23.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 22 as though fully set forth herein.

24.    Unless Defendant is restrained and enjoined by this court from continuing to violate Hawaii Rev. Stat. Chap. 446E and § 480-2(a) in the manner described herein, it will continue to do so, irreparably harming and injuring the consuming public of the State of Hawaii.

WHEREFORE, plaintiff prays that this court:

1.    Find, order, adjudge and declare that Defendant's conduct, as alleged herein, violates the statutory provisions set forth above.

4

2.    Issue a temporary restraining order, preliminary injunction and permanent injunction directing the Business Registration Division of the Department of Commerce and Consumer Affairs of the State of Hawaii to dissolve, terminate, revoke and/or cancel all trade names, trademarks, corporate registrations and certificates of authority held by or for the defendant.

3.    Issue a temporary restraining order, preliminary injunction and permanent injunction enjoining the defendant, its agents, employees, successors and assigns, directly or indirectly, individually or in concert with others, or through any corporate or other device from any of the following:

a.  Providing any post-secondary instructional programs or courses leading to a degree;

b.  Acting as or holding itself out as a "college, academy, institute, institution, university" or anything similar thereto;

c.  Failing to comply with Hawaii Rev. Stat. Chap. 446E or § 480-2(a) in any particulars; and

d.  Owning or operating any business in the State of Hawaii, claiming to operate under the laws of the State of Hawaii, or having a presence in Hawaii until all restitution, civil penalties and costs entered herein are fully satisfied.

4.    Assess appropriate civil penalties against the defendant pursuant to Hawaii Rev. Stat. § 480-3.1 and enter judgment in favor of the plaintiff accordingly.

5.    Award any consumers injured by the aforementioned violations full restitution, including pre and post judgment interest, against the defendant pursuant to Hawaii Rev. Stat. § 487-14 and the court's inherent authority and enter judgment accordingly.

6.    Assess and award judgment in favor of the plaintiff and against the defendant, for attorneys' fees, costs, costs of investigation, interest, and other expenses.

7.    Award plaintiff such other relief as the court may deem just and equitable under the circumstances.

DATED:  Honolulu, Hawaii, May 8, 2008.


JEFFREY E. BRUNTON
Attorney for Plaintiff

Civil No. _____ ; State of Hawaii v. Stewart University of America;
COMPLAINT AND SUMMONS

| **STATE OF HAWAII** CIRCUIT COURT OF THE FIRST CIRCUIT | **SUMMONS** **TO ANSWER CIVIL COMPLAINT** | CASE NUMBER (Civil No. |
|---|---|---|

| **PLAINTIFF**                              VS. STATE OF HAWAII, by its Office of Consumer Protection | **DEFENDANT** !STEWART UNIVERSITY OF AMERICA, a District !of Columbia non-profit corporation |
|---|---|

**PLAINTIFF'S ATTORNEY (Name, Address, Tel. No.)**
JEFFREY E. BRUNTON    #2833
Office of Consumer Protection
235 South Beretania Street, Room 801
Honolulu, Hawaii 96813-2419
Telephone:  (808) 586-2636

**TO THE DEFENDANT(S):**

You are hereby summoned and required to serve upon plaintiffs attorney, whose address is stated above, an answer to the complaint which is attached.  This action must be taken within twenty (20) days after service of this summons upon you, exclusive of the day of service.

If you fail to make your answer within the twenty (20) day time limit, judgment by default will be taken against you for the relief demanded in the complaint.

If you fail to obey this summons, this may result in an entry of default and default judgment.

Pursuant to Rule 4(b) of the Hawai'i Rules of Civil Procedure, this summon shall not be delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the District or Circuit courts permits, in writing on the summons, personal delivery during those hours.

In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

| DATE ISSUED MAY - 8 2008 | CLERK        F. OTAKE | FIRST CIRCUIT COURT STATE OF HAWAII **SEAL** | |
|---|---|---|---|
| I do hereby certify that this is a full, true, and correct copy of the original on file in this office. | CIRCUIT COURT CLERK | | |

1C-P-306

SUMMONS TO ANSWER CIVIL COMPLAINT

1   SPENCER P. SCHEER #107750
    JOSHUA L. SCHEER #242722
2   AUSTIN D. GARNER #184022
    REILLY D. WILKINSON #250086
3   JONATHAN SEIGEL #168224
    SCHEER LAW GROUP, LLP
4   155 N. REDWOOD DRIVE, SUITE 100
    SAN RAFAEL, CA  94903
5   Telephone:  (415) 491-8900
    Facsimile:  (415) 491-8910
6   S.135-215S

7   Attorneys for Plaintiff

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  SAN FRANCISCO POLICE CREDIT UNION,  Case No.: C08 02996 RS

14          Plaintiff,                 **PROOF OF SERVICE BY MAIL**

15      vs.                            Hearing –

16  WILLIAM BULLOCK STEWART III, and   Date: August 27, 2008
    DOES 1-50, inclusive,              Time: 9:30 a.m.
17
                                       Place: U.S. District Court
18          Defendants.                      280 South 1st Street
19                                           Courtroom 4, 5th Floor
20                                           San Jose, CA
21

22          I, SHANNON MYLES, declare that:

23          I am employed in the County of Marin, State of California.  I am over the age of
    18 and am not a party to the within action; my business address is 155 N. Redwood Drive, Suite
24  100, San Rafael, California  94903.

25          On July 16, 2008, I served the within PLAINTIFF'S NOTICE OF MOTION
    AND MOTION FOR REMAND; PLAINTIFF'S MEMORANDUM OF POINTS AND
26  AUTHORITIES IN SUPPORT OF MOTION FOR REMAND; DECLARATION OF
    JONATHAN SEIGEL IN SUPPORT OF MOTION FOR REMAND on the interested parties in
27  this action by placing true and correct copies thereof enclosed in a sealed envelope with postage
    prepaid in the United States Mail at San Rafael, California, addressed as follows:

28

                              PROOF OF SERVICE - 1

1

2   WILLIAM BULLOCK STEWART, III
    2094 EL CAMINO REAL, #128
3   SANTA CLARA, CA 95050

4   LEORA R. RAGONES
    LOMBARDI LOPER & CONANT, LLP
5   1999 HARRISON STREET, SUITE 2600
    OAKLAND, CA 94612

6   [ X ]    (By Mail [Federal])  I placed such envelope with postage thereon fully prepaid in the
                 United States mail at San Rafael, California.
7

8   [  ]     (By Mail [State])  I am readily familiar with SCHEER LAW GROUP, LLP's practice for
                 the collection and processing of correspondence for mailing with the United
9                States Postal Service; it is deposited with the United States Postal Service on the
                 same date in the ordinary course of business at the business address shown above;
10               I am aware that on motion of the party served, service is presumed invalid if the
                 postal cancellation date or postage meter date is more than one day after the date
11               of deposit for mailing contained in this declaration.

12  [  ]     (By Personal Service)  I caused such envelope to be delivered by hand to the
                 addressee(s).

13  [  ]     BY OVERNIGHT MAIL: by depositing in a box or other facility regularly maintained by
                 DHL, an express carrier, or delivering to a courier or driver authorized by said express
14               service carrier to receive documents, a true copy of the foregoing document in sealed
                 envelopes or packages designated by the express service carrier, addressed as stated
15               above, with fees for overnight delivery provided for or paid.

16  [ X ]    Executed on July 16, 2008, at San Rafael, California.

17  [ X ]    (State)  I declare under penalty of perjury under the laws of the State of California that
                 the foregoing is true and correct.
18

19  [ X ]    (Federal)  I declare that I am employed in the office of a member of the Bar at whose
                 direction this service was made.
20

21                                     /s/ Shannon Myles

22  H:\CLIENT CASES\SF POLICE V. STEWART\MOTION TO REMAND-POS (7-16-08)

23

24

25

26

27

28

PROOF OF SERVICE - 2